578 P.2d 1011

**The STATE of Arizona, Appellee,**

v.

**James Ronald BAILES, and Darryl Scott Phillips, Appellants.**

**Nos. 2 CA–CR 1168, 2 CA–CR 1175.**

Court of Appeals of Arizona, Division 2.

March 1, 1978.

Rehearings Denied April 5, 1978.

Reviews Denied May 2, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Harley D. Kurlander, Tucson, for appellant Bailes.

Jeffrey W. Hanes, Tucson, for appellant Phillips.

## OPINION.

RICHMOND, Chief Judge.

Appellants James Ronald Bailes and Darryl Scott Phillips were tried jointly by a jury on charges arising out of the kidnapping of a Tucson housewife from the El Con Shopping Center parking lot in December 1975. The victim was taken in her car into the desert and raped there by one of her two kidnappers, who then took her watch and ring before the two men drove away in her vehicle. Bailes was convicted of kidnapping for rape, rape, theft of a motor vehicle, and robbery. Phillips was convicted of kidnapping for rape, robbery, and theft of a motor vehicle with intent to temporarily deprive.

None of the various points raised on these consolidated appeals merits reversal in either case, for the reasons set forth below.

### JAMES RONALD BAILES

Bailes challenges his convictions on seven grounds:

1. The witness Frances MacBride was his common-law wife under Georgia law and should not have been permitted to testify.

2. Impeachment of MacBride was improper.

3. A photograph of appellants seized in a warrantless search of a residence where Bailes had been staying should have been suppressed.

4. The trial court erred in refusing to appointed an investigator to locate two other suspects.

5. The trial court erred in refusing to instruct the jury on evidence that Bailes was not present at the time and place of the crime.

6. Pre-trial photographic identification should have been suppressed.

7. The facts did not constitute the crime of robbery.

MacBride testified without objection at the preliminary hearing that within a few days after the date of the crimes Bailes had given her the victim's watch and ring as a Christmas present. She also testified that for a period of three years up until two months before the hearing she had lived with Bailes and held herself out as his wife in Florida, Georgia and Arizona. Prior to trial Bailes moved to preclude her from testifying under A.R.S. § 13–1802[1] on the grounds that they were married, according to Georgia law, which recognizes common-law marriages, see Georgia Code Annotated § 53–101, Brown v. Brown, 234 Ga. 300, 215 S.E.2d 671 (1975), and that marriages valid by the laws of the place where contracted are valid in Arizona. A.R.S. § 25–112 A

■ Essential to common-law marriage in Georgia are: (1) parties able to contract; (2) an actual contract; (3) consummation according to law. Georgia Code Annotated § 53–101. When the relationship between the parties begins as an illicit arrangement, the burden is on the party asserting the validity of the marriage to show that the illicit relationship ended and the parties did actually enter into a marriage. Brown v. Brown, supra. Here, according to MacBride's testimony at the hearing on the motion in limine, she and Bailes had lived together illicitly for about a year in Florida, where there are no common-law marriages, before going to Georgia in December 1974 or January 1975 "to get married * * * with a license and blood tests and all that." At that time they were unaware of either Florida or Georgia statutes with respect to common-law marriage. They returned to Florida without obtaining a license or going through any marriage ceremony and remained there until they came to Tucson in the summer of 1975. They again went to Georgia in April or May 1976 and remained there a few months before returning to Florida. In August or September 1976 they applied for a marriage license in Florida.

■ Although MacBride testified they regarded themselves as husband and wife throughout the three years they lived together, the admitted fact that they were ignorant of Georgia law regarding common-law marriages and intended "to get married" by more conventional means when they went to Georgia in 1974 or early 1975 establishes that they then regarded their relationship as illicit. It was their burden to show the end of that relationship and that they subsequently entered into a marriage contract. Brown v. Brown, supra. While MacBride had identified herself to friends and landlords as Mrs. Bailes, she used the name MacBride when applying for a job and on income tax returns. She also testified:

"Q. * * * Francie, do you remember talking to the police in September of 1976?

"A. Yes.

"Q. At that time you talked to them because you were concerned about Ronnie; is that right?

"A. yes.

"Q. Did you ever tell him you were his wife?

"A. No—I don't guess I did.

"Q. Do you remember referring to him as your boyfriend?

"A. Yes."

The trial court found from the evidence that the parties were not married. It does not appear that its finding was clearly erroneous, In Re Estate of Trigg, 3 Ariz.App. 385, 414 P.2d 988 (1966), hence denial of the motion in limine was not error. See also Krisko v. John Hancock Mutual Life Insurance Co., 15 Ariz.App. 304, 488 P.2d 509 (1971).

On September 8, 1976, MacBride told detective John Martin that within a few days after the crimes she had seen Bailes with

1. § 13–1802.
   "A person shall not be examined as a witness in the following cases:

"1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, . . . ..
* * * *"

clothing identified in photographs as clothes stolen from the victim's car. At the preliminary hearing she testified:

"Q. They showed you other pictures besides the watch, and the ring, and the shirt?

"A. They were all of clothes, I think.

"Q. Whole bunch of clothes?

"A. Two or three shirts and a jacket, pants, and the watch and ring.

"Q. Did you identify any of these shirts or this jacket, pair of pants or any other piece of clothing?

"A. Yes."

At trial, with respect to the clothes, she testified:

"Q. You never identified any of these other items?

"A. No. Ronnie never owned anything like that."

     \*     \*     \*     \*     \*     \*

"Q. Did you tell them you had never seen any of this clothing before?

     \*     \*     \*     \*     \*     \*

"THE WITNESS: I believe that I didn't say that I didn't identify them because I don't ever remember seeing them, but I know, you know, probably said I have never seen him in any clothes like that. He wouldn't wear something like that."

■ The prosecutor over timely objection then was allowed to impeach MacBride with the preliminary hearing transcript and the testimony of detective Martin. Bailes contends that mere denial of a prior statement was not prejudicial to the state's case and should not have subjected MacBride to impeachment by the party calling her. *State v. LaBarr*, 115 Ariz. 444, 565 P.2d 1305 (App.1977). Her testimony went beyond such denial, however, in the volunteered exculpatory statement that she had never seen Bailes in any such clothing, and impeachment was properly allowed. *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973).

■ Bailes also was a suspect in an unrelated homicide. Another suspect, Gerald Morse, told police that someone fitting Bailes's description was staying with him, and consented to a search of his residence. During the search an officer found two photographs, including one of Bailes and Phillips that was used in identifying them in the instant case. Bailes attacks the search on alternative grounds: first, that Morse was so highly intoxicated that he was unable to give valid consent, and second, that Morse's consent could not extend to Bailes's effects. Testimony at the hearing on a motion to suppress the photographs established that Morse was extremely intoxicated when he arrived at the police station. He was given coffee to drink and his interrogation was delayed while police talked with other witnesses. Consent to search his residence for another suspect (Bailes) and identification of the other suspect was obtained more than an hour after Morse's arrival. Although Bailes testified at the hearing that the photographs were kept in a closed box, the officer who seized them testified that he had found them lying in plain view on top of a dresser in one of the bedrooms, and it is not contended that Morse could not consent to the search of the room. *Compare State v. Tucker*, 118 Ariz. 76, 574 P.2d 1295 (filed January 30, 1978). Examining the evidence in the light most favorable to supporting the trial court's ruling on the motion to suppress, *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), we find no error.

■ Prior to trial, the court denied a motion for appointment of an investigator to locate two other individuals who had been eliminated as suspects after a photograph of one of them had been shown to the victim. In the absence of clear and convincing evidence that Bailes was prejudiced by the denial of the motion, and that the appointment was reasonably necessary to present an adequate defense, the ruling of the trial court will not be disturbed on appeal. *Cf. State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977). The instant case is clearly distinguishable from *Bowen v. Eyman*, 324 F.Supp. 339 (D.Ariz.1970), relied on by Bailes. In *Bowen*, it was conceded that the requested blood test could have

negated the defendant's guilt. It was within the trial court's discretion here to determine whether finding the two men was reasonably necessary to Bailes's defense. Although one of them in some respects met the physical characteristics of the victim's assailant, she had eliminated him as a suspect after seeing his photograph. We find no abuse of discretion in refusing to appoint an investigator.

■ The trial court refused to give the following jury instruction offered by Bailes:

"The defendant has produced evidence that he was not present at the time and place the alleged crime was committed. If you have a reasonable doubt whether the defendant was present at the time and place the alleged crime was committed, you must find the defendant not guilty."

Other than his denial that he was present, there was no evidence of Bailes's whereabouts at the time of the crimes. The jury was properly and adequately instructed on the elements of the crimes charged and on reasonable doubt. It was not error to refuse the requested instruction. *State v. Hess*, 9 Ariz.App. 29, 449 P.2d 46 (1969).

■ Bailes was identified by the victim from a photographic lineup in September 1976, after he had been arrested on the unrelated homicide charge. The photograph had been made at the time of his arrest and showed him with two blackened eyes and a broken nose. He contends the lineup was unduly suggestive because he was the only one of eight subjects so disfigured. The trial court determined otherwise. Bailes contends the out-of-court identification should have been stricken under *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), where the lineup was held unduly suggestive because the defendant was the only person who had a moustache and a beard. Here, however, there was no evidence that either of the victim's assailants had facial injuries at the time of the attack, whereas in *Dessureault* the person perpetrating the offense was described as having a moustache and a beard. The victim had looked at some 2,000 photographs between the date of the crimes and her identification of Bailes. Under the totality of the circumstances the identification was reliable. *See State v. Ware*, 113 Ariz. 340, 554 P.2d 1267 (1976). In any event, Bailes does not claim that the in-court identification was tainted by the previous identification, and there is ample evidence that the in-court identification was based on factors independent of the challenged procedure.

■ Finally, we reject Bailes's contention that there was insufficient evidence of force to support his conviction of robbery. The victim testified that Bailes kicked her while she was kneeling on the ground, pushed her face in the dirt, and removed her watch and ring. Bailes argues at most this constitutes grand theft from the victim's person. He does not explain how we are to disassociate the described force from the taking of the watch and ring, nor do we believe an explanation possible.

## DARRYL SCOTT PHILLIPS

Phillips raises five issues on his appeal:

1. Adequacy of the jury instruction on aiding and abetting.

2. Sufficiency of the evidence to support his conviction of kidnapping for rape.

3. Sufficiency of the evidence to support his robbery conviction.

4. Denial of his motion to suppress identification.

5. Excessiveness of his sentences.

■ He argues that the court's instruction to the jury on aiding and abetting was reversibly defective in omitting the element of intent. The instructions as a whole, however, sufficiently informed the jury with respect to the various charges of the essential elements of both general and specific intent. Specifically, they were instructed:

"All persons concerned in the commission of a particular crime, whether they directly commit the act or aid and abet in its commission, are guilty of the crime as principals.

"Aiding and abetting means simply to assist in the commission of an act either by active participation in it or in some manner advising or encouraging it. Aiding and abetting requires some positive act in aid of the commission of the offense and an active force, physical or moral, joined with that of the perpetrator in producing it. However, knowledge that a crime is being committed even when coupled with presence at the scene is not by itself enough to show that the person having such knowledge was part of the crime.

\*    \*    \*    \*    \*    \*

"For most crimes such as rape and kidnapping this—the State must prove that the defendant has done an act forbidden by law and that he intended to do it. It may be determined that the defendant intended to do the act if he did it voluntarily. The State does not have to prove that the defendant knew the act was forbidden by law.

"However, for certain crimes such as kidnapping for rape, theft of a motor vehicle, temporary theft of a motor vehicle, robbery and grand theft from the person, the State must prove that the defendant committed the act with a specific intent. Unless the State proves that the defendant acted with the specific intent required the crime has not been committed.

"Thus, in order to prove either the defendant [sic] guilty of the crime of kidnap for rape, the State must prove that the defendant specifically intended at the time of a kidnapping that the rape occur.

"For the crime of theft of a motor vehicle the State must prove that the defendant specifically intended that the owner be permanently deprived of his motor vehicle. For the crime of temporary theft of a motor vehicle the State must prove that the defendant specifically intended that the owner be temporarily deprived of his motor vehicle. For the crime of robbery the State must prove that the defendant specifically intended that there be a permanent taking of the victim's property. For the crime of grand theft from the person the State must prove that the defendant specifically intended that there be a permanent taking of the victim's property."

We find that the instructions given were comprehensive and fair to Phillips. *See* *State v. Beard*, 107 Ariz. 388, 489 P.2d 25 (1971).

■ The two questions on sufficiency of the evidence may be answered together. The manner in which Bailes and Phillips forcibly entered the victim's vehicle and the fact that she was then taken immediately to the isolated desert area where she was raped and robbed by Bailes are sufficient circumstantial evidence of Phillips's intent to support his convictions as an aider and abettor on the charges of kidnapping for rape and robbery.

■ The victim testified at the suppression hearing that she had tentatively identified Phillips from a group of 10 to 12 photographs but wanted to see him before making a positive identification. Ten days later she identified him positively from a lineup at the Pima County Sheriff's office. She had been able to see him clearly on the day of the crime as he entered her car and during the ride to the desert. Whether there has been an accurate in-court identification of the defendant, not tainted by prior identification procedures and whether such procedures are fair, are preliminary questions for the trial court, and its determination will not be overturned on appeal absent a clear and manifest error. *State v. Lamb*, 116 Ariz. 134, 568 P.2d 1032 (1977). The court's ruling was supported by the evidence, and we find no error.

■ Finally, Phillips attacks the length of his concurrent prison sentences of 20 to 50 years without possibility of parole for 20 years (kidnapping for rape) and 10 to 20 years (robbery). The extended record including the nature of his criminal acts and the pre-sentence report does not disclose a clear abuse of discretion. In the absence of such abuse, the sentences will not be altered on appeal. *State v. O'Donnal*, 110 Ariz. 552, 521 P.2d 984 (1974).

The judgments and sentences are affirmed.

HOWARD and HATHAWAY, JJ., concur.