914 P.2d 1340

**STATE of Arizona, Appellee,**

v.

**Dewey Emil STRONG, Appellant.**

No. 1 CA–CR 94–0585.

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 5, 1995.

Review and Cross–Petition for
Review Denied April 23, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

WEISBERG, Judge.

Dewey Emil Strong ("defendant") appeals his convictions and the sentences imposed for two counts of armed robbery and two counts of kidnapping. For the following reasons, we reverse one conviction and sentence for armed robbery while affirming all other convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

Defendant's convictions stem from a robbery at a Phoenix fast food restaurant on August 13, 1993. The manager of the restaurant testified that, as she was preparing the restaurant for opening, defendant approached her at the back door and inquired about a job. She told defendant to return at 10:00 a.m. when the restaurant opened. When the restaurant opened, defendant entered and was given a job application, which he proceeded to fill out. Sometime later, defendant told the manager that he was not feeling well and asked for a glass of water. The manager gave him some water and went to her office to telephone her boss because she was concerned that defendant might become ill.

While the manager was in her office, defendant pulled a gun on the employee working the "drive-thru" and directed her to go with him to the manager's office. Inside the office, defendant had the employee kneel down and demanded that the manager open the safe. After it was opened, defendant had the manager hand him all the money in the safe and then ordered the two women into another room before fleeing.

Based on information obtained from the owner of a frame store located across the street from the restaurant, the police prepared a photographic lineup that included a picture of defendant. Both the manager and employee identified defendant as the robber from the lineup.

Defendant was indicted on two counts of armed robbery, Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–1904, and two counts of kidnapping, A.R.S. § 13–1304. The state subsequently alleged that defendant was on parole for convictions in Ohio at the time he committed the charged offenses. Following trial to a jury, defendant was convicted on all counts as charged. Based on the evidence present-

ed at sentencing, the trial court found that defendant was on parole at the time he committed the offenses and sentenced him to four concurrent life terms pursuant to A.R.S. section 13–604.02(A). The trial court further directed that defendant's sentences be served consecutively to any sentences that might be imposed for a parole violation in Ohio. Defendant filed a timely notice of appeal.

### ISSUES

Defendant raises five issues:

1. Whether the trial court erred in finding that the photographic lineup used to obtain an identification of defendant was not unduly suggestive.

2. Whether the trial court erred in refusing to give a *Willits* instruction.

3. Whether the trial court erred in denying defendant's motion for acquittal on one of the armed robbery counts.

4. Whether the trial court erred in imposing life sentences pursuant to A.R.S. section 13–604.02.

5. Whether the trial court erred in directing that defendant's sentences be served consecutively to any sentences he must serve in Ohio for parole violation.

### DISCUSSION

#### A. Motion to Suppress Identifications.

Prior to trial, defendant moved to suppress all identification testimony on the grounds that the photographic lineup used by the police was unduly suggestive. Following a hearing, the trial court denied defendant's motion and permitted the state to introduce evidence of the identifications at trial. On appeal, defendant contends that the trial court abused its discretion in denying his motion. We disagree.

■ The fourteenth amendment to the United States Constitution requires police to conduct pretrial identification procedures in a manner that is fundamentally fair. *State v. Smith*, 146 Ariz. 491, 496, 707 P.2d 289, 294 (1985). An unduly suggestive identification procedure may cause a witness to misidentify a defendant and thereafter repeat the misidentification at trial. *Id.* Thus, if a defen-

dant challenges a proposed in-court identification, a hearing must be held to determine whether the pretrial identification process was unduly suggestive. *State v. Dessureault*, 104 Ariz. 380, 384, 453 P.2d 951, 955 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). At such a hearing, the state must prove by clear and convincing evidence that the process was not unduly suggestive. *Id.* A determination by the trial court that pretrial identification was not unduly suggestive will not be disturbed absent a showing of clear and manifest error. *State v. Fierro*, 166 Ariz. 539, 545, 804 P.2d 72, 78 (1990).

■ Defendant attacks the fairness of the pretrial identification on the basis that his photograph was different from the other four in that his was obtained from the Department of Motor Vehicles while the others were booking photos. Also, his photograph was somewhat blurry and had a scratch through the face and a white spot on the forehead due to the poor quality of the picture. Defendant makes no claim that the others depicted in the photographic lineup do not resemble him; his argument focuses solely on the defects in his photograph.

■ Reviewing courts will not disturb a trial court's decision to admit identification evidence based on mere subtle differences among photographs in a photo lineup. *State v. Dixon*, 153 Ariz. 151, 154, 735 P.2d 761, 764 (1987). "Lineups need not and usually cannot be ideally constituted. Rather the law only requires that they depict individuals who basically resemble one another such that the suspect's photograph does not stand out." *State v. Alvarez*, 145 Ariz. 370, 373, 701 P.2d 1178, 1181 (1985) (citation omitted).

Our supreme court has rejected arguments based on the types of differences among photographs that defendant decries here. In *State v. Perea*, 142 Ariz. 352, 356, 690 P.2d 71, 75 (1984), the court stated that there would be no undue suggestiveness where the defendant's was the blurriest photograph in the lineup. The court was equally unmoved by other arguments that the defendant's photograph was first in the lineup and that he was the only subject who had been present at

a party attended by the victim and witnesses shortly before the crime. 142 Ariz. at 356–57, 690 P.2d at 75–76. In *State v. Ault,* 150 Ariz. 459, 467, 724 P.2d 545, 553 (1986), the supreme court also rejected an argument that a photographic lineup was unduly suggestive where the defendant's photograph was "the only one not taken from a full, frontal position, but at an upward angle."

Arizona courts have rejected claims of undue suggestiveness based on far less subtle distinctions than those complained of in this case. *See, e.g., State v. Via,* 146 Ariz. 108, 119, 704 P.2d 238, 249 (1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986) (defendant was only subject with "the beginnings of a full beard"); *State v. Money,* 110 Ariz. 18, 21–23, 514 P.2d 1014, 1017–19 (1973) (in-person lineup not unduly suggestive despite minor differences in height, weight and hair length, and where only defendant had a mustache); *State v. Bailes,* 118 Ariz. 582, 587, 578 P.2d 1011, 1016 (App.1978) (photographic lineup not unduly suggestive despite fact that only defendant was disfigured with two blackened eyes and a broken nose). Because of the "basic resemblance" between defendant and the other persons pictured, the trial court did not err in finding that the photographic lineup was not unduly suggestive.

**B. Refusal to Give *Willits* Instruction.**

Defendant also contends that the trial court erred in not giving a requested *Willits* instruction based on the unavailability of certain possible fingerprint evidence. Such an instruction directs that if the jury finds that the state has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are at issue, it may infer that the true fact is against the state's interest. *See State v. Willits,* 96 Ariz. 184, 187, 393 P.2d 274, 276 (1964). In requesting the instruction, defendant noted that the police destroyed some fingerprint lift cards after making a unilateral decision that they were not usable, while failing to attempt to obtain fingerprints at certain other locations the robber was reported to have been.

Absent an abuse of discretion, we will not reverse a trial court's decision to forego a *Willits* instruction. *State v. Boston,* 170 Ariz. 315, 318, 823 P.2d 1323, 1326 (App. 1992). In order to be entitled to a *Willits* instruction, a defendant must prove (1) that the state failed to preserve material evidence that was accessible and which might tend to exonerate him, and (2) resulting prejudice. *State v. Leslie,* 147 Ariz. 38, 47, 708 P.2d 719, 728 (1985).

A trial court does not abuse its discretion in refusing to give a *Willits* instruction based on a failure by the police to preserve possible fingerprint evidence when such evidence would not establish innocence. *State v. Torres,* 162 Ariz. 70, 76, 781 P.2d 47, 53 (App.1989); *see also State v. Tucker,* 157 Ariz. 433, 442, 759 P.2d 579, 588 (1988) (fingerprint evidence does not possess "exculpatory value"). Thus, we find no error by the trial court in refusing defendant's request.

**C. Sufficiency of Evidence for Sentence Enhancement.**

Defendant next maintains that there is insufficient evidence to support the trial court's finding that he was on parole at the time he committed the charged offenses. We disagree.

At sentencing, the state introduced certified copies of documents that established defendant's convictions on multiple felonies in Ohio and the grant of parole in October, 1992. In addition, defendant's parole officer testified that defendant was granted parole on October 27, 1992, and that he was on parole on August 13, 1993, the date of the robbery. This evidence is more than sufficient to permit the trial court to find that defendant was on parole when he committed the offenses and, therefore, was subject to the sentence enhancement provisions of A.R.S. section 13–604.02.

**D. Requirement that Sentences be Served Consecutively.**

Defendant next asserts that the trial court erred in directing that his sentences be served consecutively to any sentence he must serve in Ohio for any parole violation. De-

fendant relies upon *State v. King*, 166 Ariz. 342, 802 P.2d 1041 (App.1990), but his reliance is misplaced. Unlike *King*, which involved a pending petition to revoke probation, defendant has been sentenced on his convictions in Ohio and was simply released on parole. This situation does not present any of the concerns discussed by the *King* court. *State v. Rios*, 169 Ariz. 108, 110, 817 P.2d 53, 55 (App.1991). Thus, there was no error by the trial court in ordering that the sentences in the instant case be served consecutively to any undischarged Ohio sentences defendant may be required to serve in the future. *Id.*

### E. Sufficiency of Evidence for Multiple Robbery Convictions.

Defendant last argues, and we agree, that there is insufficient evidence to support his conviction on the second count of armed robbery. The indictment charged defendant with two counts of armed robbery naming the manager and the drive-thru employee as separate victims. The evidence at trial, however, established that there was only one theft committed by defendant, i.e., the taking of the money from the restaurant safe. Under these circumstances, irrespective of the number of people threatened in the course of the armed robbery, only one armed robbery occurred.

A.R.S. section 13-1902(A) defines robbery as follows:

A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

A.R.S. section 13-1904(A) converts a "robbery" into an "armed robbery" when a deadly weapon or dangerous instrument is used or threatened to be used in the course of committing the offense.

Our supreme court has stated that the "main difference between the crimes of theft and robbery lies in the use or threat of force." *State v. Tramble*, 144 Ariz. 48, 52, 695 P.2d 737, 741 (1985); *see also State v.* *Celaya*, 135 Ariz. 248, 252, 660 P.2d 849, 853 (1983) (theft is lesser-included offense of robbery). To transform a theft into robbery, all that is required is that force be used or threatened "against any person," not necessarily only against the person being dispossessed of the property. *State v. McGuire*, 131 Ariz. 93, 96, 638 P.2d 1339, 1342 (1981). As such, the approach in Arizona is to emphasize the property aspects of the crime of robbery and treat it as "an aggravated form of theft." 1 RUDOLPH J. GERBER, CRIMINAL LAW OF ARIZONA 1902-4 (2d ed. 1993).

Because it is undisputed that there was only one taking, we conclude that the conviction on the second armed robbery count must be vacated. *Cf. State v. Berryman*, 106 Ariz. 290, 291, 475 P.2d 472, 473 (1970) (multiple robbery counts were upheld where sequential takings were from two cash registers). In reaching this conclusion, we expressly reject the state's argument that separate offenses of robbery should be deemed to exist for each threat that occurs during a theft. Although there are jurisdictions that have adopted this approach, *e.g.*, *Commonwealth v. Rozplochi*, 385 Pa.Super. 357, 561 A.2d 25, 30 (1989), we find their analysis inconsistent with our supreme court's interpretation of the relationship between the Arizona theft and robbery statutes. *See State v. Faatea*, 65 Haw. 156, 648 P.2d 197, 198 (1982) (only one offense per taking where robbery is considered to be a form of aggravated theft). We, therefore, conclude that only one armed robbery occurred in the instant case.

### CONCLUSION

We have reviewed the entire record for fundamental error and have found none. Because the evidence does not support a finding that defendant is guilty of more than one armed robbery, we reverse his second conviction and life sentence for armed robbery, and affirm defendant's three remaining convictions and sentences.

GRANT, P.J., and PATTERSON, J., concur.