992 P.2d 1135

**The STATE of Arizona, Appellee,**

v.

**Thomas Michael RILEY, Appellant.**

**No. 2CA–CR98–0247.**

Court of Appeals of Arizona, Division 2, Department B.

June 29, 1999.

Redesignated as Opinion and Publication Ordered Sept. 21, 1999.

Review Denied Jan. 4, 2000.

**42**

Janet Napolitano, Arizona, Attorney General By Paul J. McMurdie and Toni Marie Valadez Phoenix, Attorneys for Appellee.

Isabel G. Garcia, Pima County Legal Defender By Joy Athena, Tucson, Attorneys for Appellant.

## OPINION

ESPINOSA, Judge.

¶ 1 A jury found appellant Thomas Michael Riley guilty of six counts of armed robbery, six counts of aggravated assault, and six counts of kidnapping arising out of a bank robbery involving six employees. The trial court sentenced him to aggravated prison terms totaling sixty-three years. Riley argues that the court erred in permitting telephonic testimony during his suppression hearing, denying his motion to suppress, and imposing consecutive sentences. He further argues that five of his armed robbery convictions must be vacated. For the reasons set forth below, we affirm.

### Facts and Procedural Background

¶ 2 We view the facts in the light most favorable to sustaining the convictions, with all reasonable inferences resolved against the defendant. *State v. Valencia*, 186 Ariz. 493, 924 P.2d 497 (App.1996). As employees were entering a bank branch and preparing to open it on December 12, 1996, an armed gunman pushed F., a teller, into the building, pointing his gun at her and ordering her and M., the assistant manager, to lie on the floor. They complied and another armed man came into the bank and tied their hands behind their backs. The first gunman, later identified as Riley, pointed his gun at another employee, C., and ordered her on the floor. The second gunman, codefendant Donald Malone, grabbed S. and told her to get on the floor. Malone then pointed his gun at L., a teller, escorted him to where the other employees were lying face down on the floor, and bound his hands behind his back. When another manager, U., arrived for work, Malone pulled her inside, put her face down on the floor with the others, and tied her hands behind her back.

¶ 3 Riley held his gun to S.'s head and asked if she had the keys to the automatic cash machine. After she indicated she did not, he asked who had the combination. M. stated that she did, and Riley pointed the gun at her and ordered her to open the machine. After M. was unable to, Riley took her to the vault, and she asked S., who had the second combination, to help her. The vault was opened, and Riley made the two lie down on the floor again while he packed cash into a duffel bag. Riley and Malone then left the bank. After a few minutes, the employees locked the door and called the police. Taken was about $245,000 in bundles of cash of varying denominations, each bound with a purple wrapper bearing the bank's markings, a date stamp of December 11, 1996, and S.'s initials.

¶ 4 Almost a month later, Riley and Malone were arrested for illegal possession of firearms after being stopped for speeding by Officer Frank Lombardo of the South Brunswick, New Jersey, Police Department. Malone had· over $4,000 cash in his pocket, including a stack of fifty-dollar bills wrapped in a purple bank wrapper, date stamped December 11, 1996, and Riley had two guns tucked in his waistband. Police subsequently obtained a search warrant and discovered $160,000 cash bundled in bank wrappers in the men's hotel room.

¶ 5 After Riley and Malone were indicted on eighteen counts of armed robbery, kidnapping, and aggravated assault, Riley moved to suppress all evidence obtained as a result of the traffic stop, claiming he had been illegally detained. Over the objections of both defendants, the court permitted Officer Lombardo to testify telephonically at the suppression hearing. The court denied the motion to suppress, and the jury ultimately found Riley guilty on all counts. This appeal followed.

### Confrontation Rights

¶ 6 Riley argues the trial court violated his constitutionally guaranteed confrontation rights by permitting Officer Lombardo to testify telephonically at the suppression hearing, contending he was deprived of a "face-to-face" confrontation. Both the Sixth Amendment to the United States Constitution and article II, § 24, of the Arizona Constitution "guarantee a defendant the right to confront his accusers and witnesses at trial." *State v. Pereda*, 111 Ariz. 344, 345, 529 P.2d 695, 696 (1974). The primary focus of the Confrontation Clause is to assure that a jury has an adequate basis upon which to evaluate the truth of a witness's statement. *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983); *State v. Anaya*, 165 Ariz. 535, 799 P.2d 876 (App.1990). Cross-examination is the preferred method "by which the confrontation clause may be satisfied." *Anaya*, 165 Ariz. at 541, 799 P.2d at 882; *see State v. Vess*, 157 Ariz. 236, 756 P.2d 333 (App.1988).

¶ 7 Riley relies on *People v. Levine*, 231 Mich.App. 213, 585 N.W.2d 770 (1998), for the proposition that Confrontation Clause protections apply to a pretrial suppression hearing. It is well established, however, that confrontation rights do not apply to the same extent at a pretrial suppression hearing as they do at trial. *United States v. Boyce*, 797 F.2d 691 (8th Cir.1986); *see also United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424, 435 (1980) ("[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself."). Unlike a trial, which determines a defendant's guilt or innocence, the purpose of a pretrial suppression hearing is to determine whether the accused's constitutional rights were violated. *State v. Hein*, 138 Ariz. 360, 674 P.2d 1358 (1983). Furthermore, the demands of the Confrontation Clause are not absolute. *Vess*. Exceptions may be made upon a showing of necessity and minimal abridgment of the right to accommodate that necessity. *Id.*

¶ 8 The state requested that Lombardo be allowed to appear telephonically to avoid the hardship, inconvenience, and expense of having him travel from New Jersey for "an hour or two of hearings" and then return for trial a month later. Riley was present for Lombardo's testimony at the hearing and, unlike the defendant in *Levine*, was able to thoroughly cross-examine the officer. Although he was unable to see Lombardo during the pretrial hearing and assess his demeanor, Lombardo testified in person during Riley's trial at which time both the

court and the jury could assess his credibility and demeanor. Riley did not reurge his motion to suppress. We therefore conclude that any infringement on Riley's confrontation rights was minimal and, consequently, cannot say the trial court erred in permitting the telephonic testimony. *Cf. State v. Downes,* 19 Or.App. 401, 528 P.2d 110 (1974) (trial court not required to hold hearing to allow defendant opportunity to confront state's witnesses when defendant did not dispute facts underlying suppression motion).

¶ 9 Furthermore, even assuming a violation of Riley's Sixth Amendment confrontation rights occurred, reversal is not necessarily required because such violations are subject to a harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *State v. Wilhite,* 160 Ariz. 228, 772 P.2d 582 (App.1989). As we noted above, Lombardo testified before the jury at Riley's trial. Moreover, the evidence against Riley was overwhelming. All six victims positively identified him as the first armed gunman, and bank security cameras photographed him during the robbery. Thus, even if the trial court erred in allowing telephonic testimony at the suppression hearing, Riley was not prejudiced by the lack of face-to-face confrontation with Officer Lombardo. Consequently, any error was harmless.

## Motion to Suppress

¶ 10 Riley argues that the trial court erred in denying his motion to suppress, claiming that his detention was unlawful, that the officer's ordering him out of the vehicle was unauthorized, and that "neither of these actions can be legally supported by officer safety concerns." On appeal from the denial of a motion to suppress evidence, we review the trial court's ruling for clear and manifest error. *State v. Rodriguez,* 186 Ariz. 240, 921 P.2d 643 (1996); *State v. Stanley,* 167 Ariz. 519, 809 P.2d 944 (1991). We view the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *State v. Moore,* 183 Ariz. 183, 901 P.2d 1213 (App.1995).[1]

¶ 11 At about two o'clock in the morning on January 9, 1997, Lombardo was on patrol in a marked police car when he spotted three vehicles exceeding the speed limit. Two of the vehicles immediately slowed down. The third, a Toyota 4Runner, accelerated away from him. Lombardo followed the 4Runner, which reached speeds in excess of 110 miles per hour, and he attempted to stop it in a well-lighted area. The 4Runner slowed down as if to stop, then sped up, and pulled away from Lombardo. It eventually stopped in an area that was "pitch black." Lombardo approached the vehicle, which had an obscured temporary license tag, from the passenger side. He rapped on the window but the passenger, later identified as Riley, stared straight ahead while the driver, Malone, operated the electric window. Malone's left hand was not visible, and Riley had his hand "tucked up underneath his leather jacket pockets" and continued to stare straight ahead. Malone reached over Riley to comply with Lombardo's request for the keys and his driver's license, and Lombardo noticed his hands were shaking. Malone was unable to produce a vehicle registration or proof of insurance.

¶ 12 Lombardo asked Malone to step out of the vehicle and observed that he was sweating profusely despite the cold and that he looked about fifteen years older than the age listed on his temporary driver's license, issued the day before. Lombardo also observed that the temporary tag on the vehicle appeared to have been altered. Malone was unable to tell Lombardo his passenger's last name or the last name or phone number of the 4Runner's owner. Contrary to Lombardo's instructions, Malone repeatedly put his hands in his pockets, drawing Lombardo's attention to a bulge in his right trouser pocket. Lombardo patted him down and found a "large wad of money" in a bank wrapper that

---

1. The state challenges Riley's standing to contest the admission into evidence of the cash found in Malone's pockets and the gun found under his car seat. We need not consider this argument because the record shows the state did not raise it before the trial court. *State v. Main,* 159 Ariz. 96, 764 P.2d 1155 (App.1988).

"had $2000 written on the back" and, noting another bulge in his left pocket, found another bundle of cash. Lombardo then placed Malone in the back seat of his patrol car and reapproached Riley.

¶ 13 Riley initially did not respond to Lombardo's requests that he exit the vehicle and give his name. When he did step out of the 4Runner, Lombardo asked him if he had anything on him that could hurt the officer. Riley reached toward his waistband, and Lombardo immediately pushed him against the car and patted him down, finding two handguns. He then arrested Riley for unlawful possession of weapons and placed him in the patrol car. Looking into the 4Runner, Lombardo saw the butt of another handgun under the driver's seat, and he placed Malone under arrest as well. The trial court denied the motion to suppress, concluding that Lombardo had "reasonable suspicion" to detain and question Malone and Riley and that the subsequent searches were justified by "reasonable safety concerns."

¶ 14 Riley argues that, when Lombardo asked Malone to wait in the back of his patrol car, "all of the purposes of the stop had concluded," and at that point, he was unlawfully detained because the officer "had nothing other than a hunch to continue to question [him]." A police officer may not detain a person for investigative purposes unless the officer has a "reasonable, articulable suspicion that a particular person ha[s] committed, [i]s committing, or [i]s about to commit a crime." *State v. Wiley*, 144 Ariz. 525, 530, 698 P.2d 1244, 1249 (1985) (emphasis omitted), *overruled on other grounds*, *State v. Superior Court*, 157 Ariz. 541, 760 P.2d 541 (1988); *see also State v. Dickey*, 152 N.J. 468, 706 A.2d 180 (1998) (officer conducting investigatory stop may broaden inquiry when circumstances give rise to reasonable suspicions unrelated to stop).

¶ 15 Here, Lombardo had reasonable grounds to continue his investigation. Notwithstanding Malone's explanation that he had won the money in Atlantic City, the cash Lombardo discovered pursuant to a lawful pat-down search was still bound in a bank wrapper. Malone had been unable to provide the vehicle owner's name or phone number, claimed not to know his passenger's last name, possessed questionable identification, was sweating despite the winter temperature, and claimed to be going home, but was headed in the opposite direction from the address on his temporary license. Malone's erratic driving, nervousness, and responses to questions suggested deception, meriting further investigation by Lombardo's questioning Riley. Thus, the stop's purpose had not concluded when Lombardo asked Malone to wait in the back of the patrol car. *See United States v. Baron*, 94 F.3d 1312 (9th Cir.1996) (officer had reasonable suspicion sufficient to expand inquiry of traffic stop when vehicle did not belong to driver and driver could not name the registered owner, appeared nervous, and gave inconsistent stories).

¶ 16 Riley also contends that Lombardo had no basis to order him out of the vehicle. In *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 48 (1997), the Supreme Court held that a police officer may, as a matter of course, order a passenger in a lawfully stopped vehicle to exit the car "pending completion of the stop." As discussed above, the legitimately expanded stop was still ongoing when Lombardo put Malone into his car and asked Riley to step out of the 4Runner. Additionally, when Riley reached for his waistband in response to Lombardo's question about weapons, Lombardo's reasonable concern for his safety justified his pat-down search. *See State v. Smith*, 136 Ariz. 273, 665 P.2d 995 (1983). Accordingly, the trial court did not err in denying Riley's motion to suppress the evidence found.

### Armed Robbery Convictions

¶ 17 Riley argues that five of his six armed robbery convictions must be vacated, claiming that because only one taking of property occurred, as a matter of law, only one robbery occurred, relying on *State v. Strong*, 185 Ariz. 248, 914 P.2d 1340 (App. 1995). In that case, the indictment charged the defendant with two counts of armed robbery arising from a restaurant robbery, naming each of the employees present as separate victims. Division One of this court

found the evidence insufficient to support two counts of armed robbery, concluding that only one theft had occurred when the defendant took money from the restaurant's safe, "irrespective of the number of people threatened in the course of the armed robbery." *Id.* at 252, 914 P.2d at 1344.

¶ 18 We decline to follow *Strong* because the robbery statute and case law interpreting it suggest robbery is a crime against a person, not against property. Section 13–1902(A), A.R.S., states:

A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

The use of force against a person is what distinguishes robbery from theft. *See State v. Tramble,* 144 Ariz. 48, 52, 695 P.2d 737, 741 (1985) ("[T]he main difference between the crimes of theft and robbery lies in the use or threat of force, and not in whether the taking was from the person's body or from his or her immediate area of control."); *see also State v. Kinkade,* 147 Ariz. 250, 709 P.2d 884 (1985); *State v. McNair,* 141 Ariz. 475, 687 P.2d 1230 (1984). The use of force can be "against any person," not necessarily the person dispossessed of the property. *State v. McGuire,* 131 Ariz. 93, 638 P.2d 1339 (1981). In that case, our supreme court rejected the appellant's challenge to his robbery conviction when the evidence showed he used force against the named robbery victim in order to prevent her from resisting the taking of property from her deceased husband.

¶ 19 In *State v. Soto–Fong,* 187 Ariz. 186, 928 P.2d 610 (1996), our supreme court found that the defendant's use of force to prevent three store employees from resisting his taking store property supported separate counts of armed robbery, attempted armed robbery, aggravated robbery, and attempted aggravated robbery, despite the alleged lack of evidence showing taking or attempted taking of property from the person or immediate presence of two of them. The court reasoned:

"A.R.S. § 13–1902 requires only that force be used 'against any person,' not necessarily only against the person dispossessed of the property." *State v. McGuire,* 131 Ariz. 93, 96, 638 P.2d 1339, 1342 (1982). Force was used to prevent all three of the victims in this case from resisting the taking of property from the El Grande Market. This action falls within the purview of A.R.S. § 13–1902(A).

187 Ariz. at 200, 928 P.2d at 624. Riley and Malone used deadly force against all six bank employees in order to prevent their resistance to the taking of money from the immediate presence of M. and S., who had opened the vault and were still in it while Riley removed cash. Consequently, we conclude the trial court did not err in denying Riley's motion for judgment of acquittal, Rule 20, Ariz. R.Crim. P., 17 A.R.S., on five of the armed robbery counts. *See State v. Sullivan,* 187 Ariz. 599, 931 P.2d 1109 (App.1996).

## Consecutive Sentences

¶ 20 Lastly, Riley contends that the trial court erred in imposing consecutive sentences, arguing his offenses all arose out of a single incident. A.R.S. § 13–116.[2] The trial court sentenced Riley to aggravated prison terms of twenty-one years for each armed robbery and kidnapping conviction and fifteen years for each aggravated assault conviction, but ordered that the sentences for the offenses for each named victim be served concurrently with one another. Thus, the sentences for the offenses involving M. as the named victim are to be served concurrently to one another, but consecutively to the sentences for the offenses involving S., which are consecutive to those involving F. All the sentences involving the remaining three victims are to be served concurrently.

¶ 21 Riley argues that concurrent sentences are required because only one armed

---

2. That statute states in part, "An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

robbery occurred, into which all the aggravated assault and kidnapping counts merged. We disagree with Riley's theory for the same reasons we rejected his contention that only one armed robbery occurred. Moreover, as the state points out, § 13–116 does not apply to sentences imposed for a single act that harms multiple victims. *State v. Gordon,* 161 Ariz. 308, 778 P.2d 1204 (1989); *State v. Gunter,* 132 Ariz. 64, 643 P.2d 1034 (App. 1982). Riley committed multiple acts upon multiple victims; accordingly, the trial court did not err in imposing consecutive sentences. *See State v. Henley,* 141 Ariz. 465, 687 P.2d 1220 (1984) (no error in imposing consecutive sentences for two counts of aggravated assault based upon firing a gun when bullet passed through first victim and struck second); *State v. White,* 160 Ariz. 377, 773 P.2d 482 (App.1989) (consecutive sentences for each offense upheld when single act caused separate criminal result to each of four victims); *State v. Devine,* 150 Ariz. 507, 724 P.2d 593 (App.1986) (no error in imposing consecutive sentences for separate counts of aggravated assault committed upon each individual victim on same occasion); *see also State v. Gantt,* 108 Ariz. 92, 492 P.2d 1199 (1972) (defendant could be separately punished for robbery of two victims even though the two offenses might have occurred at approximately same time and location).

¶ 22 Riley's convictions and sentences are affirmed.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and JOSEPH W. HOWARD, Judge.