4 P.3d 444

STATE of Arizona, Appellee,

v.

Jermaine Lamar RUTLEDGE, Appellant.

No. 1 CA–CR 99–0182.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 10, 2000.

Review Denied Sept. 26, 2000.

Janet Napolitano, Arizona Attorney General by Paul J. McMurdie, Chief Counsel,

Criminal Appeals Section and Gregory A. McCarthy, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

VOSS, Judge.

¶ 1 Appellant Jermaine Lamar Rutledge (defendant) appeals his convictions on one count of first degree murder, two counts of armed robbery, and one count of attempted first degree murder, and from the sentences imposed.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 Late in the evening of May 12, 1997, childhood friends Ryan Harris and Chase Clayton partied at several Valley nightclubs to celebrate their recent 21st birthdays, with Clayton driving the pair in a 1997 Ford Explorer. While stopped at a red light near 40th Street and Camelback shortly after 1:00 a.m. on May 13th, Harris and Clayton met defendant's brother, Sherman Rutledge, and several other persons, who were on foot. Clayton offered them a ride, and the group ended up at a friend's apartment nearby. Clayton and Sherman Rutledge left the apartment briefly, with Clayton driving the Explorer to an area near 16th Street and Campbell. There, Sherman Rutledge left the vehicle and returned with defendant, then 16–years old. Clayton, Sherman Rutledge, and defendant returned in the Explorer to the friend's apartment, where the group stayed for a short time.

¶ 3 Eventually, defendant,Sherman Rutledge, Clayton, and Harris left the apartment to drive Sherman Rutledge to a nearby park. Clayton was in the driver's seat and Harris in the front passenger's seat. Sherman Rutledge sat in the back seat behind Clayton, and defendant sat behind Harris.[2] After Clayton parked the Explorer in the park, defendant put a knife to Clayton's throat, and the two struggled over the knife. Clayton was able to push the knife away and get out of the Explorer. Sherman Rutledge also got out of the Explorer, and shot Clayton in the back as Clayton ran from the park. Sherman Rutledge also shot Harris, and pulled him from the vehicle. Sherman Rutledge and defendant then drove off in the Explorer.

¶ 4 Clayton was able to make it to a nearby convenience store, where he called police. Officers went to the park, where they found Harris' body a short distance from where the Explorer had been parked. Harris had bled to death. The Explorer was found the next day in Mesa, gutted by fire.

¶ 5 Defendant was charged with the first degree murder of Harris, the armed robbery of Harris, the armed robbery of Clayton, and the attempted first degree murder of Clayton. The jury convicted him as charged.[3] The trial court sentenced him to prison for the rest of his natural life for the murder of Harris, and to 21 years, concurrent, on the remaining three convictions. Defendant timely appealed.

## DISCUSSION

### A. Accomplice Liability Instruction

¶ 6 In Arizona, a person commits first degree murder if:

1. Intending or knowing that the person's conduct will cause death, such person causes the death of another with premeditation.

2. Acting either alone or with one or more other persons such person commits or attempts to commit ... robbery under § 13–1902, 13–1903 or 13–1904 ..., and in the course of and in furtherance of such offense or immediate flight from such of-

---

1. We view the facts and the inferences therefrom in the light most favorable to sustaining the verdict. *E.g., State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992).

2. Apparently, two other persons were in the Explorer on the way to the park. One person sat

between Sherman Rutledge and defendant in the back seat, and one sat in the rear cargo area.

3. Defendant was also charged with arson for the burning of the Explorer, but was acquitted by the jury on this charge.

fense, such person or another person causes the death of any person. A.R.S. § 13–1105(A). In this case, the state argued that defendant was guilty of first degree murder under either theory for the killing of Ryan Harris, and the jury was instructed accordingly. The jury found defendant guilty of first degree murder, but the form of verdict did not specify whether the jury had found him guilty of premeditated murder or felony murder, or both.[4]

¶ 7 Because the state had not alleged that defendant had actually killed Harris, it requested that the jury be instructed on accomplice liability. In this regard, the jury was given the following instruction, without objection from defendant:

> A person is criminally accountable for the conduct of another if the person is an accomplice of such other person in the commission of the offense. An accomplice is a person who, with the intent to promote or facilitate the commission of the offense, aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.

See A.R.S. §§ 13–301, –303; Recommended Arizona Jury Instruction(Criminal) 30.[5]

¶ 8 However, over defendant's objection, the trial court also gave the following instruction:

> The defendant is criminally responsible for everything done by an accomplice which was a probable and natural consequence of the common plan. The defendant need not act out each element of the charged offense. The acts of one accom-

plice are imputed to all. However, there must be proof that this defendant had knowledge that a criminal act was intended and that the defendant's actions were taken with the intent that a criminal act be promoted or facilitated and that the offense committed was a reasonable natural and foreseeable consequence.

¶ 9 In giving this instruction, the trial court stated that it did so based on *State v. Marchesano*, 162 Ariz. 308, 783 P.2d 247 (App.1989). In that case, Marchesano and a friend, Allen Tommasone, entered a restaurant and robbed it at gunpoint. The restaurant owner followed the two as they left the restaurant. As the owner emerged from the building, Tommasone shot him in the arm. *Id.* at 310, 783 P.2d at 249. On appeal, Marchesano argued that, even if he acted as an accomplice in robbing the restaurant, he could not be convicted of attempted first degree murder of the restaurant owner because, although *Tommasone* might have acted with premeditation, there was no evidence that *he* did. *See* A.R.S. § 13–1105(A)(1).[6] Thus, the issue before the court was whether Tommasone's premeditation could be attributed to Marchesano as his accomplice. 162 Ariz. at 313, 783 P.2d at 252.

¶ 10 In determining this issue, the *Marchesano* court started with the rule of liability that an accomplice "is criminally accountable for the conduct of another." A.R.S. § 13–303(A)(3). The court then turned to the question "whether, in the attribution of an accomplice's conduct, the law also attributes the accomplice's culpable state of mind."

---

4. Acknowledging that the law did not require it, defendant did request that the jury be given separate forms of verdict for the first degree murder charge, which would have required the jury to specify under which theory it was convicting. The state objected. The trial court denied defendant's request, stating that, because the state was not seeking the death penalty, separate forms of verdict would simply complicate the issue for the jury.

5. A.R.S. § 13–301 provides:
   In this title, unless the context otherwise requires, "accomplice" means a person ... who with the intent to promote or facilitate the commission of an offense:
   1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense.
   3. Provides means or opportunity to another person to commit the offense.
   A.R.S. § 13–303 provides:
   A. A person is criminally accountable for the conduct of another if:
   * * *
   3. The person is an accomplice of such other person in the commission of an offense.

6. The felony murder rule did not apply because the restaurant owner did not die, and attempted felony murder is not a cognizable crime in Arizona. 162 Ariz. at 313, 783 P.2d at 252.

162 Ariz. at 313–14, 783 P.2d at 252–53. The court concluded that it did.

Arizona courts have long acknowledged that joint participation in a general felonious plan is enough to hold an accomplice liable as principal for any crime committed in the execution of the plan.... In *State v. Collins,* [111 Ariz. 303, 528 P.2d 829 (1974)], our supreme court employed a foreseeability standard to uphold the first degree felony murder conviction of an accomplice. The court stated, "The killing [by the defendant's armed accomplice] was part of a chain of events which the defendant's deliberate acts in perpetuating the robbery had set in motion and was a risk reasonably to be foreseen." 111 Ariz. at 307, 528 P.2d at 833.

*Marchesano,* 162 Ariz. at 314, 783 P.2d at 253. Relying on *Collins* and a line of California cases in accord with it, the *Marchesano* court held that the "rule of foreseeability endures, and we adhere to it today."

The jury could reasonably have inferred, not only from [Marchesano's] participation in the robbery, but also from his having supplied the weapons, that [Marchesano] accepted the risk that his accomplice would deliberately shoot to kill during the robbery or the escape. Because Tommasone's attempted murder of the restaurant owner was a readily foreseeable incident of their flight from the scene of an armed crime, accomplice liability attached to [Marchesano], and we affirm his conviction [for attempted first degree murder].

*Id.* at 315, 783 P.2d at 254.

■ ¶ 11 On appeal, defendant argues first that, although *Marchesano* did discuss accomplice liability in detail, it did not discuss or approve a jury instruction like the one given in this case. Initially, we agree that this distinction has some merit. This court has discouraged jury instructions that quote verbatim from appellate opinions. *State v.*

*Martinez,* 175 Ariz. 114, 120, 854 P.2d 147, 153 (App.1993). However, so long as the "*Marchesano* instruction" properly reflected the law of accomplice liability, we will find no error. Cf. *State v. Averyt,* 179 Ariz. 123, 130, 876 P.2d 1158, 1165 (App.1994) (jury instruction that omits element of offense charged not "substantially free from error").

■ ¶ 12 In this regard, defendant argues that the "*Marchesano* instruction" not only misstated the law, it allowed the jury to convict him on a theory of culpability not recognized in Arizona. Specifically, defendant contends the *Marchesano* instruction was "a not-very-thinly-disguised" instruction on *Pinkerton* liability, which has been disapproved by our supreme court.[7]

■ ¶ 13 Under what is called the *Pinkerton* doctrine, a conspirator may be held liable for a crime committed by another co-conspirator, providing the acts that make up the crime are reasonably foreseeable and are carried out in furtherance of the conspiracy, even though the conspirator did not participate in its commission. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Whether *Pinkerton* liability was part of Arizona's common or statutory law was discussed by the Arizona Supreme Court in *State ex rel. Woods v. Cohen,* 173 Ariz. 497, 844 P.2d 1147 (1992). In that case, Cohen had been charged with one count of conspiracy under A.R.S. § 13–1003 and twelve counts of substantive offenses, such as theft and fraud, that had been committed by his co-conspirators.[8] After analyzing Arizona's conspiracy and accomplice statutes, the *Cohen* court concluded that the circumstances under which one could be held criminally liable for the conduct of another were exclusively defined by accomplice liability, and that "*Pinkerton* liability is not ... the equivalent of accomplice liability." *Id.* at 500, 844 P.2d at 1150.

---

7. The record does not reflect that defendant raised this objection below. However, we believe that instructing the jury on a non-existent theory of liability would constitute fundamental or structural error, which we would address on appeal despite defendant's failure to raise the issue below. *See State v. Orendain,* 188 Ariz. 54, 932 P.2d 1325 (1997).

8. A.R.S. § 13–1003 provides, in part:

A. A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense....

[W]e think there is a logical distinction between *agreeing to the commission of a crime by another and agreeing to aid another in committing a crime,* the latter being more participatory than the former. The distinction between being an accomplice and being a conspirator to a completed crime is certainly subtle when the crime conspired to is the one actually committed, but there is a difference.... A conspirator to a completed offense is not always an accomplice to that offense.

*Id.* at 500–01, 844 P.2d at 1150–51 (emphasis in original). Accordingly, the *Cohen* court held that *Pinkerton* liability was not the law in Arizona, and ordered the case remanded to the trial court to determine whether there was sufficient evidence to proceed against Cohen on the substantive charges based on accomplice liability. *Id.* at 501, 844 P.2d at 1151.

¶ 14 Turning then to the *Marchesano* instruction given here, defendant argues that the phrases "common plan" and "acts of one accomplice are imputed to all" allowed the jury to convict him of first degree murder merely because he was a conspirator to the theft of the Explorer—the precise theory of *Pinkerton* liability held not to exist in *Cohen.* We disagree.

■ ¶ 15 On appeal, we do not review a single sentence of jury instructions out of context; rather we view the jury instructions in their entirety in determining whether they adequately reflect the law. *E.g., State v. Gallegos,* 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994); *State v. Cruz,* 189 Ariz. 29, 35, 938 P.2d 78, 84 (App.1996). The instructions given "need not be faultless." *State v. Noriega,* 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996). We will not reverse a conviction based on the trial court's ruling on a jury instruction "unless we can reasonably find that the instructions, when taken as a whole, would mislead the jurors." *State v. Strayhand,* 184 Ariz. 571, 587, 911 P.2d 577, 593 (App.1995); *see also Gallegos,* 178 Ariz. at 10, 870 P.2d at 1106.

¶ 16 Here, the *Marchesano* instruction, although perhaps somewhat inartfully worded, clearly explained defendant's criminal responsibility for the conduct of an accomplice,

not a co-conspirator. The instruction referred in three different places to the liability of an accomplice, which was properly defined in the immediately preceding instruction as one who, with the intent to promote or facilitate the commission of the offense—i.e., the theft of the Explorer—"aid[ed], counsel[ed], agree[d] to aid or attempt[ed] to aid another person"—his brother—in planning or committing the offense. *See generally* A.R.S. § 13–301. Construing the accomplice instructions as a whole, we do not believe it reasonable that the jury could have convicted defendant for the premeditated murder of Harris under any theory of liability other than that of accomplice liability.

**B. Armed Robbery Conviction As To Harris**

■ ¶ 17 Defendant also argues, without citation to authority, that there was insufficient evidence to support the armed robbery conviction as to Ryan Harris, contending that there was no evidence "that Harris was robbed of anything."

■ ¶ 18 A.R.S. § 13–1902(A) provides:

A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

The use of force is what distinguishes robbery from theft. *See State v. Tramble,* 144 Ariz. 48, 52, 695 P.2d 737, 741 (1985). Accordingly, our supreme court has held that robbery requires "only that force be used 'against any person,' not necessarily only against the person dispossessed of the property." *State v. McGuire,* 131 Ariz. 93, 96, 638 P.2d 1339, 1342 (1981) (upholding robbery conviction as to wife who was tied up in order to allow defendant to steal husband's property); *see also State v. Soto–Fong,* 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (use of force against three store employees to prevent defendant's taking of store property supported robbery counts as to all three, despite lack of evidence as to two employees

that property was taken "from [their] person or immediate presence").

¶ 19 As the state points out in its answering brief, however, this court has held to the contrary. In *State v. Strong*, 185 Ariz. 248, 914 P.2d 1340 (App.1995), the defendant stole money from a restaurant, and was charged with theft and two counts of armed robbery. Another panel of this court held that, because "there was only one theft committed by defendant, i.e., the taking of the money from the restaurant safe," only one armed robbery occurred, regardless of the number of people threatened in the course of the robbery. *Id.* at 252, 914 P.2d at 1344.

¶ 20 Relying on the supreme court cases of *McGuire* and *Soto–Fong*, division two of this court has declined to follow *Strong*. In *State v. Riley*, 196 Ariz. 40, 992 P.2d 1135 (App. 1999), *rev. denied*, Jan. 4, 2000, the defendant was convicted of armed robbery as to each of six bank employees involved in defendant's theft of money from the bank. Finding that the defendant had used deadly force against all six employees to prevent their resistance to the taking of money from the bank vault, division two upheld all six convictions. *Id.* at ¶¶ 17–19.

¶ 21 We too decline to follow *Strong*. In this case, there was more than sufficient evidence that defendant participated in the use of force against both Clayton and Harris to steal the Explorer. We uphold his armed robbery conviction as to Harris.

## CONCLUSION

¶ 22 Based on the foregoing, defendant's convictions and sentences are affirmed.

CONCURRING: SUSAN A EHRLICH, Presiding Judge, and JON W. THOMPSON, Judge.