PEOPLE v LEVINE

Docket No. 200181. Submitted February 11, 1998, at Lansing. Decided August 14, 1998, at 9:20 A.M. Leave to appeal sought.

Brian E. Levine was convicted following a bench trial in the Oakland Circuit Court, Meyer Warshawsky, J., of possession of marijuana with intent to deliver. He appealed, alleging violation of his rights to confront witnesses and due process when he was not allowed to cross-examine at a suppression hearing an undercover police officer who had received information from a confidential source regarding the defendant's involvement with marijuana and who had told another police officer of that involvement. The second police officer's surveillance of a residence led to the stop and search of the defendant's vehicle and the discovery of marijuana in the trunk of the vehicle. The court had allowed the prosecutor to produce an affidavit from the undercover officer setting forth why he needed to remain anonymous and why he believed the confidential source to be reliable. The court considered the affidavit and found that it sufficiently established the confidential source as reliable. The court found that the second officer's observations at the scene corroborated the information received in the tip and that the police had probable cause to search the vehicle.

The Court of Appeals *held*:

1. The United States Supreme Court has not held that the Confrontation Clause applies only to trials. The Sixth Circuit Court of Appeals has not decided that the protections of the Confrontation Clause apply only to trials. The Michigan Court of Appeals has rejected the argument that the right of confrontation is exclusively a trial right.

2. The protections of the Confrontation Clause extend to a pretrial suppression hearing.

3. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. Elements of the Confrontation Clause include cross-examination, oath, observation of the witness' demeanor, and a face-to-face meeting between the defendant and the defendant's accusers.

4. The procedure employed by the trial court failed to preserve any of the important elements of the defendant's confrontation rights.

5. The "informer's privilege," which entitles the government to preserve the anonymity of citizens who have furnished to law enforcement officers information concerning violations of the law, applies to citizens who aid the police, not the police themselves. It may be appropriate in this case to invoke the privilege to protect the identity of the confidential source who gave information to the undercover officer, but the defendant's right to cross-examine the undercover officer may not be limited by the privilege.

6. The prosecutor's claim that the undercover officer needed to remain anonymous because of the officer's involvement in an ongoing investigation, standing alone, is insufficient to justify denying the defendant the right of confrontation. A court that finds it appropriate to protect an undercover officer may exercise its discretion to limit cross-examination, but it was not appropriate to completely preclude cross-examination in this case.

7. The denial of the defendant's confrontation rights was not harmless error. The case must be remanded for a supplemental hearing regarding the motion to suppress evidence. The court must exercise its discretion and employ a procedure that protects the state's interests while also preserving important elements of the defendant's right to confrontation, especially his right to cross-examine the undercover police officer. After the hearing, the court must make new findings of fact regarding whether the officers had probable cause to search the trunk of the defendant's vehicle.

Remanded.

1. CONSTITUTIONAL LAW — CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES.

The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact; elements of the right to confront witnesses include cross-examination, an oath, observation of the witness' demeanor, and a face-to-face meeting between the defendant and the defendant's accusers (US Const, Am VI; Const 1963, art 1, § 20).

2. CONSTITUTIONAL LAW — CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES — PRETRIAL HEARINGS — SUPPRESSION OF EVIDENCE.

The protections of the Confrontation Clause extend to a pretrial hearing regarding the suppression of evidence (US Const, Am VI; Const 1963, art 1, § 20).

3. WITNESSES — INFORMER'S PRIVILEGE.

The "informer's privilege" that entitles the government to preserve the anonymity of citizens who have furnished to law enforcement officers information regarding violations of the law applies to citizens who aid the police, not the police themselves.

4. CONSTITUTIONAL LAW — CRIMINAL LAW — RIGHT TO CONFRONT WITNESSES.

The rights guaranteed by the Confrontation Clause are not absolute and must be interpreted in the context of the necessities of trial and the adversary process; a procedure that denies a defendant the right to face-to-face confrontation may be employed where an important state interest is involved and the procedure preserves the essence of confrontation, i.e., ensuring the reliability of the evidence by subjecting it to rigorous adversarial testing, by preserving other important elements of the confrontation right such as an oath, cross-examination, and observance of the witness' demeanor; a court may limit the scope of cross-examination where questions are intended merely to harass, annoy, or humiliate the witness or where inquiries would tend to endanger the personal safety of the witness (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Richard H. Browne*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Miro Weiner & Kramer, P.C.* (by *Thomas W. Cranmer* and *Matthew F. Leitman*), for the defendant.

Before: McDONALD, P.J., and SAWYER and HOEKSTRA, JJ.

McDONALD, P.J. Following a bench trial, defendant was convicted of possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(iii); MSA 14.15(7401) (2)(d)(iii), and was sentenced to two years' probation. Defendant appeals as of right. We remand for an evidentiary hearing consistent with this opinion.

Defendant's conviction arises from the events of November 15, 1995, when the police stopped defend-

ant and searched the trunk of his vehicle. Inside the trunk, the police discovered a black bag containing 2.2 ounces of marijuana, a digital scale, $320, and other drug paraphernalia.

On November 15, 1995, Officer Shelly Turner of the Farmington Hills police received a telephone tip that defendant and others would be at a house on Club House Lane that evening with a large amount of marijuana. The tip came from an undercover police officer who had received the information from a confidential source. Officer Turner was informed that defendant would be leaving the house with his share of the marijuana, but was not informed what type of vehicle defendant would drive to the house, when he would arrive, what he looked like, or where he would go after he left the house. She verified the names and addresses she received through the Secretary of State. Officer Turner recognized some of the names from previous narcotics arrests and investigations.

Officer Turner placed the house on Club House Lane under surveillance approximately forty-five minutes after receiving the telephone tip. When she arrived at the house, there were approximately seven cars in the driveway. She observed three cars arrive and three other cars leave within a fifteen- to twenty-minute period between 10:30 P.M. and 11:30 P.M. Officer Turner believed on the basis of her experience in previous narcotics investigations that the amount of traffic at the house at that time on a Wednesday indicated narcotics activity. After this initial surveillance, Officer Turner met with a uniformed officer, Officer Michael Farley, a short distance away from the house and told him she had information from a confidential informant and was watching the house

on Club House Lane. Officer Farley agreed to assist in the investigation by stopping a car if he had an opportunity.

Officer Turner resumed surveillance of the house on Club House Lane. She observed a man wearing dark clothing and carrying a black bag place the bag in the trunk of a car at the end of the driveway and drive away. Officer Turner radioed the uniformed officers she had been working with and told them what the man had done and which way he had driven. She followed the car out of the subdivision and observed the driver twice fail to come to a complete stop when required. She directed the uniformed officers to stop the car.

Officer Farley stopped the car. Defendant was the only occupant of the car. Officer Farley initially told defendant he was stopped to inquire about some telephones that possibly had been stolen in the area and asked defendant whether he had any stolen telephones or contraband in his vehicle. Defendant denied involvement with any stolen property and denied having contraband in the car. He indicated he had been at "Hos' " house. At that point, Officer Farley returned to his car to wait for Officer Turner to arrive. Officer Farley eventually searched the trunk of the vehicle and found the bag containing the marijuana, the digital scale, $320 in cash, five clear plastic bags contained in a larger clear plastic bag, and three marijuana pipes.

Defendant was charged with possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii). Before trial, defendant moved to suppress the evidence obtained during the search of his trunk, arguing the police lacked proba-

ble cause to search. The trial court held an evidentiary hearing, at which Officer Turner and Officer Farley testified. However, the undercover officer who had relayed the tip to Officer Turner did not testify.

At a later hearing, defendant argued the prosecution was required to produce the undercover officer who had obtained the tip from the confidential source. Defendant argued the undercover officer should be required to testify and be cross-examined regarding the information he received. The prosecutor claimed the undercover officer needed to remain anonymous because he was currently investigating the activities of defendant and defendant's friends. The trial court instructed the prosecutor to obtain an affidavit from the undercover officer setting forth why the undercover officer needed to remain anonymous and why the undercover officer believed the confidential source who had provided the tip was reliable. Defendant objected to this procedure because it did not give him an opportunity to cross-examine the undercover officer, but the trial court proceeded, rejecting defendant's suggestion that the undercover officer testify in chambers. The prosecution produced the affidavit, and the trial court found the affidavit sufficiently established the confidential source was reliable. The trial court further found Officer Turner's observations at the scene corroborated the information received in the tip. Accordingly, the trial court found the police did have probable cause to search and denied defendant's motion to suppress the evidence obtained during the search.

On appeal, defendant argues the trial court violated his rights under the Confrontation Clauses of the state and federal constitutions when it did not allow

him to cross-examine the undercover police officer at the suppression hearing. Defendant also argues the trial court's failure to allow him to cross-examine the officer violated his due process rights. Because of these violations of his constitutional rights, defendant argues, the trial court erred in considering the undercover police officer's affidavit in determining probable cause. Accordingly, defendant contends he is entitled to a new trial or a new suppression hearing.

The Sixth Amendment's Confrontation Clause, which is made applicable to the states through the Fourteenth Amendment, *Pointer v Texas*, 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. The Michigan Constitution also guarantees the accused the right "to be confronted with the witnesses against him . . . ." Const 1963, art 1, § 20. The right of confrontation originated to prevent " 'the practice of trying defendants on "evidence" which consisted solely of ex parte affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact.' " *People v Tanner*, 222 Mich App 626, 632; 564 NW2d 197 (1997), quoting *California v Green*, 399 US 149, 156; 90 S Ct 1930; 26 L Ed 2d 489 (1970). The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Maryland v Craig*, 497 US 836, 845; 110 S Ct 3157; 111 L Ed 2d 666 (1990); *People v Sammons*, 191 Mich App 351, 356;

478 NW2d 901 (1991). There are several elements of the confrontation right, including cross-examination, oath, observation of the witness' demeanor, and a face-to-face meeting between the defendant and the defendant's accusers. *Craig, supra* at 845-846.

The prosecution contends defendant has no right of confrontation at a pretrial suppression hearing, suggesting the United States Supreme Court has held the Confrontation Clause only applies to trials. Contrary to the prosecution's suggestion, the United States Supreme Court has not limited the protections afforded by the Confrontation Clause to trials. The prosecution cites *Kentucky v Stincer*, 482 US 730, 736; 107 S Ct 2658; 96 L Ed 2d 631 (1987), and *Pennsylvania v Ritchie*, 480 US 39, 52; 107 S Ct 989; 94 L Ed 2d 40 (1987). In *Stincer*, the defendant claimed his confrontation rights had been violated where he was excluded from a hearing to determine the competency of child witnesses. The prosecution argued the Confrontation Clause's protections did not extend to a pretrial hearing. However, the Supreme Court did not hold that the protections of the Confrontation Clause were inapplicable to such a hearing. Instead, as this Court explained the Supreme Court's holding in *Stincer* in *Sammons, supra* at 360-361:

> Noting that the defendant was permitted under Kentucky law to move for reconsideration of the competency determination after the child witnesses testified at trial, the Supreme Court found that the defendant's rights under the Confrontation Clause had not been violated, given the opportunity for full and effective cross-examination during trial as a means of establishing incompetency to testify, as well as undermining credibility. [*Stincer, supra*] at 743-744.

The Supreme Court also discussed the scope and policy of the Confrontation Clause in *Ritchie*, where the defendant was convicted of various crimes involving the sexual abuse of his minor daughter. In *Ritchie*, the defendant was denied access to records kept by a state protective service agency that had investigated the case after the defendant's daughter reported the abuse to the police. The defendant claimed the lack of disclosure of the information that could have made cross-examination of the victim more effective undermined the policy of the Confrontation Clause. Part III-A of Justice Powell's opinion states "[t]he opinions of this Court show that the right to confrontation is a *trial* right . . . ." *Ritchie, supra* at 52 (emphasis in original). However, this portion of Justice Powell's opinion was signed by only three other justices. Justice Blackmun, who concurred in the other portions of Justice Powell's opinion, stated that he wrote separately because he disagreed with the plurality's conclusion "that the Confrontation Clause protects only a defendant's trial rights and has no relevance to pretrial discovery." *Id.* at 61. Accordingly, the Supreme Court has not held that the Confrontation Clause is exclusively a trial right.

We also disagree with the prosecution's contention that the Sixth Circuit has decided that confrontation rights are only applicable to trials. The prosecution cites an unpublished decision of the Sixth Circuit Court of Appeals, *United States v Sissler*, 966 F2d 1455 (CA 6, 1992), and according to Sixth Circuit Court of Appeals Rule 24(c), the "[c]itation of unpublished decisions . . . is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case." Moreover, we agree with defendant that

*Sissler* is distinguishable from this case. There, the officers who were not subject to cross-examination did not give any testimony against the defendant because they invoked their Fifth Amendment privilege against self-incrimination and refused to testify. Here, while the undercover officer did not testify in court, the officer did give evidence against defendant through the affidavit.

Finding no controlling federal authority regarding the issue, we turn to the decisions of Michigan courts. In *Sammons, supra* at 361-362, this Court held the protections of the Confrontation Clause were applicable at a pretrial hearing regarding the issue of entrapment. Accordingly, this Court has rejected the prosecution's argument that the right of confrontation is exclusively a trial right. However, neither this Court nor the Michigan Supreme Court has addressed the precise issue in this case, whether the protections of the Confrontation Clause extend to a pretrial suppression hearing.

In *Sammons, supra* at 361, this Court recognized that the central concern of the Confrontation Clause, to ensure the reliability of evidence by subjecting it to rigorous testing before the trier of fact, is equally as important in the context of an entrapment hearing as at a criminal trial. This Court reasoned that although an entrapment hearing does not determine the guilt or innocence of the defendant, it is, like a trial, "adversarial in nature and requires the resolution of factual issues by a trier of fact." *Id.* Moreover, at both an entrapment hearing and a trial, "evidence is presented and testimony given." *Id.* A suppression hearing shares these characteristics of an entrapment hearing and trial. The prosecution claims a distinction

should be drawn between an entrapment hearing and a suppression hearing because if the trial court finds the defendant was entrapped, the finding serves as an absolute bar to prosecution. We disagree. The outcome of a suppression hearing may often determine whether a defendant is eventually found guilty, especially in drug possession cases like the one before us. Accordingly, we believe that to deny a defendant the protections afforded by the Confrontation Clause at a suppression hearing, including above all the right of cross-examination, would be to deny the defendant the opportunity to ensure that the evidence presented against the defendant is reliable.

Further, there is support from other jurisdictions for the application of the right to confrontation in suppression hearings as a "critical stage" of the prosecution, including the right to cross-examine government witnesses. *United States v Hodge*, 305 US App DC 204, 206; 19 F3d 51 (1994); *United States v Green*, 216 US App DC 329, 335; 670 F2d 1148 (1981); *State v Parsons*, 64 Ohio App 3d 63, 67-68; 580 NE2d 800 (1989); *State v Mondo*, 325 NW2d 201, 203 (ND, 1982); *State v Hensel*, 106 NM 8, 10-11; 738 P2d 126 (NM App, 1987); *State v Sigerson*, 282 So 2d 649, 651 (Fla App, 1973); see also 5 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (3d ed, 1996), § 11.2(d).

For these reasons, we conclude the protections of the Confrontation Clause extend to a pretrial suppression hearing. We next turn to whether defendant's rights guaranteed by the Confrontation Clause were violated in this case.

In this case, the trial court allowed the undercover police officer to submit an affidavit in lieu of testify-

ing in court. Defendant argues this use of ex parte affidavits is exactly what the Confrontation Clause was designed to protect against. We agree. The procedure employed in this case failed to preserve any of the important elements of defendant's confrontation rights. Defendant was completely precluded from cross-examining the undercover officer. See *Tanner, supra* at 632 (holding that the admission of an affidavit containing unsworn statements of an unidentified informant who was not produced at trial violated the defendant's constitutional right to confront one of his accusers); *Sammons, supra* at 366-368 (holding the defendant's confrontation rights were violated where he was completely precluded from cross-examining a witness regarding identifying information.) In addition, the use of the officer's affidavit prevented defendant from meeting the undercover officer face to face and did not provide the trier of fact an opportunity to observe the demeanor of the officer. See *Sammons, supra* at 364-366 (holding that allowing the prosecution's key witness to testify at the entrapment hearing while wearing a mask denied the defendant a critical aspect of his confrontation rights because the trial court could not adequately observe the witness' demeanor).

This case is very similar to one defendant cites, *State v Miller*, 169 Ga App 552; 314 SE2d 120 (1984). In that case, Miller, like defendant in the instant case, was charged with possession with intent to distribute marijuana. Miller filed a motion to suppress the evidence the police had seized pursuant to a search warrant, which was based upon information relayed in a tip from a confidential informant. At the suppression hearing, the state introduced the affidavit of the

police officer who had contact with the informant, but did not call the officer as a witness. In the affidavit, the police officer described the informant's tip and stated the informant had proved reliable on at least four other occasions by providing information that led to the arrest of individuals and the confiscation of contraband. The affidavit also included the officer's personal observations of numerous people entering the residence in question "at all hours of the day and night, staying for short periods of time, and then leaving." *Id.* at 552. As in the instant case, when the defense counsel in *Miller* asked the trial court to allow him the opportunity to cross-examine the police officer concerning the actual existence of the confidential informant, the trial court expressly stated that the defendant did not have the right to cross-examine the officer. The trial court also refused the defendant's request to examine the informant in camera. Instead, the trial court met privately with the officer and determined that the informant did exist. As a result, the trial court denied the defendant's motion to suppress, concluding there was probable cause for the search of the residence in question. In an interlocutory appeal, the Georgia Court of Appeals reversed the trial court's decision on the basis of the Confrontation Clause, finding the trial court erred in totally preventing cross-examination of the officer. *Id.* at 553-554. The court remanded, directing that a hearing be held in which the defendant had the opportunity to cross-examine the officer. *Id.* at 554. The court noted the trial court could exercise its discretion regarding the scope of cross-examination once the officer was on the stand and could preclude Miller from inquiring about the identity of the informant. *Id.* Likewise in

this case, we find the trial court totally prevented defendant from cross-examining the undercover officer with regard to the existence of the confidential source and issues relating to the confidential source's past reliability. Accordingly, the trial court erred.

However, the prosecution claims defendant was not entitled to discover the identity of the undercover officer because of the so-called informer's privilege. The prosecution contends the undercover officer needed to remain anonymous because of his involvement in an ongoing investigation. We find the informer's privilege is inapplicable to the undercover police officer in this case. The prosecution has not cited, and our research has not revealed, any case that has applied the informer's privilege to a police officer. In *Sammons, supra* at 368, this Court explained that the informer's privilege "entitles the government to preserve the anonymity of citizens who have furnished information concerning violations of the law to law enforcement officers, thus encouraging them to communicate such knowledge to the police," citing *Roviaro v United States*, 353 US 53, 59; 77 S Ct 623; 1 L Ed 2d 639 (1957). As this explanation indicates, the privilege applies to citizens who aid the police, not the police themselves. Accordingly, it may have been appropriate to invoke the privilege to protect the identity of the confidential source who gave information to the undercover officer in this case, but defendant's right to cross-examine the undercover officer was not limited by the informer's privilege.

Although the informer's privilege does not apply, we recognize the rights guaranteed by the Confrontation Clause are not absolute and must be "interpreted

in the context of the necessities of trial and the adversary process." *Craig, supra* at 850; *People v Burton*, 219 Mich App 278, 287; 556 NW2d 201 (1996). However, we do not agree with the prosecution that the trial court was justified in completely preventing defendant from cross-examining the undercover officer. The prosecution claims the undercover officer needed to remain anonymous because of the officer's involvement in an ongoing investigation. We find that this reason, standing alone, is insufficient to deny a defendant the right of confrontation. The prosecution could have waited until the undercover officer's investigation was complete to charge defendant. A defendant cannot be denied the right of confrontation merely because the prosecution chooses to bring charges during an ongoing investigation. When an important state interest is involved, the Supreme Court has approved a procedure that denies a defendant the right to face-to-face confrontation, but that preserves the essence of confrontation, i.e. ensuring the reliability of the evidence by subjecting it to rigorous adversarial testing, by preserving other important elements of the confrontation right such as oath, cross-examination, and observance of the witness' demeanor. *Craig, supra* at 851, 857. However, we do not believe that the involvement of an undercover officer in an ongoing investigation is an important enough interest to completely preclude a defendant from cross-examining the officer in light of the fact that the prosecution could wait until the completion of the investigation to bring charges. Of course, the trial court still has discretion to limit the scope of cross-examination "where questions are intended merely to harass, annoy, or humiliate the witness, or

where inquiries would tend to endanger the personal safety of the witness." *Sammons, supra* at 367. Accordingly, where the trial court finds that it is appropriate to protect an undercover officer, it may exercise its discretion to limit cross-examination, but it was not appropriate to completely preclude cross-examination in this case.

Finally, we realize that a violation of the right to cross-examination as guaranteed by the Confrontation Clause is subject to harmless error analysis. *People v Cunningham*, 215 Mich App 652, 657; 546 NW2d 715 (1996). Because the error is of constitutional dimension, the prosecution bears the burden of establishing the error is harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 404-406; 521 NW2d 538 (1994); *Cunningham, supra* at 657. We cannot say that the denial of defendant's confrontation rights was harmless. The trial court's finding of probable cause was in large part dependent on its finding that the confidential source was reliable, which was established by the affidavit in violation of defendant's confrontation rights. Although the trial court stated the finding of probable cause was also based on Officer Turner's corroboration of the tip, Officer Turner's observations alone could not support the finding of probable cause.[1] Whether the officers had probable cause to search the trunk of

---

[1] We note there were inconsistencies between the tip, as described in the affidavit, and Officer Turner's observations. Although the informant's tip indicated that the house on Club House Lane was the meeting place for the division of a large quantity of marijuana among three parties, including defendant, on November 14, 1995, the police actually observed defendant at the house on the night of November 15, there were at least seven cars in the driveway with three others coming and going within a twenty-minute period, and defendant had only 2.2 ounces of marijuana in his bag when the car was searched.

defendant's vehicle does seem to turn on the reliability of the information provided by the confidential source. Accordingly, we find that it is necessary to remand this case for a supplemental hearing regarding defendant's suppression motion. At this hearing, the trial court should exercise its discretion and employ a procedure that protects the state's interests (i.e., the protection of the undercover police officer's anonymity and the integrity of the continuing investigation into drug trafficking)[2] while also preserving important elements of defendant's right to confrontation, especially his right to cross-examine the undercover police officer. Following the hearing, the trial court should make new findings of fact concerning whether the officers had probable cause to search the trunk of defendant's vehicle. If the trial court concludes there was no probable cause for the search, then it should suppress the evidence seized from defendant and also vacate defendant's conviction and sentence because his conviction would not be able to stand without the evidence in question. However, if the trial court again concludes that there was probable cause for the search, no further action is required.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[2] We note these interests may no longer be important because of the length of time that has passed since the original suppression hearing.