*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 15, 2021

Plaintiff-Appellee,

v

No. 351688
Oakland Circuit Court

RONALD MARK DRAUGHN,

LC No. 2015-256768-FH

Defendant-Appellant.

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant was convicted by a jury of felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(b).[1] The trial court sentenced defendant as a third habitual offender, MCL 769.13, to serve prison terms of 23 months' to 10 years' imprisonment for both the felon-in-possession and carrying a concealed weapon convictions, and a consecutive five-year term for the felony-firearm conviction. The factual basis for defendant's convictions was an altercation defendant had with his girlfriend, Geraldine Young, and her son, Devon Young, after which defendant was apprehended and two firearms were found concealed on his person. Defendant appeals as of right, and we affirm.

## I. EXCLUDED EVIDENCE

Defendant first argues that the trial court abused its discretion by excluding as irrelevant the testimony of Leonard DeShields, Norman Lucas, and a records keeper at Action Impact Firearms. We disagree.

---

[1] The jury acquitted defendant of felonious assault, domestic violence, and another felony-firearm charge. In a previous trial, defendant was convicted of all of the charges against him, but the trial court granted defendant a new trial on the basis that his counsel was ineffective.

A trial court's decision on an evidentiary issue will be reversed on appeal only when there has been an abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001); See also MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *Aldrich*, 246 Mich App at 114. The "relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *People v Yost*, 278 Mich App 341, 403; 749 NW2d 753 (2008) (citation and quotations omitted).

Defendant contends that the testimony of the above witnesses was relevant to his theory of self-defense. The United States Constitution provides criminal defendants with the right "to present a complete defense." US Const, Ams VI, XIV; *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012), citing *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986). "Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *People v Unger* (*On Remand*), 278 Mich App 210, 249; 749 NW2d 272 (2008). However, the right is "not unlimited and is subject to reasonable restrictions." *King*, 297 Mich App at 473-474. The right to present a defense is limited "only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255, 271 (2016).

Defendant claimed below that, during his altercation with Geraldine, she was holding a purse and he knew that guns she owned were in the purse and that she would use them against him. He argued that he was acting in self-defense by possessing Geraldine's handguns after he took them from her purse. If not engaging in the commission of a crime, an individual is justified to use a reasonable amount of force against an aggressor if the individual "honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual." MCL 780.972(2); *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). Moreover, "the traditional common law affirmative defense of self-defense is generally available to a defendant charged with being a felon in possession if supported by sufficient evidence." *Id*. at 712. Defendant argues that evidence from the three witnesses was relevant to this defense because they would have shown that the guns at issue belonged to Geraldine and not defendant.

## A. LEONARD DESHIELDS

DeShields would have testified that at some point in the past, before Geraldine was dating defendant, DeShields saw a black gun on a table in Geraldine's home. Defendant argues that this testimony was relevant to demonstrate that Geraldine possessed a gun in her home, and to contradict her testimony that she did not own any guns. However, defendant's self-defense claim was that he was afraid that Geraldine would shoot him, and DeShields's knowledge that Geraldine had access to a gun before defendant was involved with her would not have provided information about what defendant might have known about her gun ownership at the relevant time. Further,

-2-

there is no indication that the firearm that DeShields saw was possessed by Geraldine on the night in question.

Had there been some indication that it was Geraldine's handgun on the table in her home, it would have strengthened defendant's argument that DeShields's testimony was relevant to Geraldine's credibility. Impeachment evidence is relevant because the jury is "entitled to assess all evidence that might bear on the accuracy and truth of a witness'[s] testimony." *People v Layher*, 464 Mich 756, 765; 631 NW2d 281, 285 (2001). However, DeShields could not testify that Geraldine owned a gun, and certainly could not testify that she possessed one during the events in question. DeShield's testimony was not about a time in close proximity to the events in this case. With the above in mind, we discern no abuse of discretion on the part of the trial court in excluding DeShields's testimony. We further note that, to the extent that the trial court erred, the error was harmless because Geraldine's son, Devon Young, himself testified that Geraldine told him that she owned a gun.

## B. NORMAN LUCAS

Defendant next argues that Lucas's testimony was relevant to establish that Geraldine had possessed a gun and had threatened others with it. However, two of the incidents that Lucas would have testified about occurred at least eight years before Geraldine was involved with defendant. Thus, there was limited relevance to whether Geraldine owned a gun that she kept in her bedroom or purse on the night of the incident with defendant. Additionally, because defendant was not aware of the incidents, the evidence did not tend to establish that he was aware of and afraid of Geraldine shooting him with a gun at that time.

Lucas also described, however, a more recent incident during which Lucas believed he saw the outline of a gun in Geraldine's purse. This evidence was simply not definitive evidence that Geraldine possessed a gun at the time of the incident. And, even to the extent that Lucas's testimony may have tended to make it more likely that Geraldine did, in fact, possess a gun on the night of the incident, Lucas testimony also would have contradicted defendant's theory of self-defense because Lucas would have testified that defendant did not fear Geraldine and had no concerns about a potential gun. For the foregoing reasons, we again discern no abuse of discretion on the part of the trial court.

## C. THE RECORDS KEEPER FOR ACTION IMPACT FIREARMS

Defendant argues that the testimony of the records keeper for Action Impact Firearms about Geraldine's purchase of a shotgun would have been relevant because it would have demonstrated that Geraldine owned guns. However, defendant's self-defense theory was that the guns he took take from Geraldine were in a purse. Defendant made no mention of being fearful that Geraldine would harm him with a shotgun, and a shotgun was not involved in the events related to defendant's trial. Therefore, the trial court did not abuse its discretion by excluding evidence that Geraldine had purchased a shotgun prior to her involvement with defendant.

## II. UNAVAILABLE WITNESS

-3-

By the time of trial, Geraldine had died of cancer. Thus, her preliminary examination testimony was read into evidence. Defendant argues that this violated his right to confront the witnesses against him.

Whether the admission of evidence violated a defendant's constitutional right of confrontation is a question of law reviewed de novo. *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012). "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. The Michigan Constitution also guarantees this right. Const 1963, art 1, § 20. In *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the Court held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. See also *People v Jordan*, 275 Mich App 659, 662; 739 NW2d 706 (2007). Testimonial hearsay includes pretrial statements if the declarant could reasonably expect that the statement would be used "in a prosecutorial manner." *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005). Testimony from a preliminary examination constitutes a testimonial statement, which can be admitted "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 US at 51-52, 59.

Defendant argues that the admission of Geraldine's preliminary examination testimony violated his right of confrontation because Geraldine was not thoroughly cross-examined. The central protection offered by the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *People v Levine*, 231 Mich App 213, 219-220; 585 NW2d 770 (1998), vacated on other grounds 461 Mich 172 (1999). Such testing is at the heart of the right of cross-examination. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). Defendants are "guaranteed a reasonable opportunity to test the truth of a witness's testimony," *id*., and "a broad range of evidence may be elicited on cross-examination for the purpose of discrediting a witness," *Wischmeyer v Schanz*, 449 Mich 469, 474; 536 NW2d 760 (1995). In *Crawford*, 541 US at 57, the Court stated that caselaw was consistent in "holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine."

Defendant acknowledges that Geraldine was cross-examined at the preliminary examination. Defendant argues, however, that Geraldine's cross-examination was inadequate because his counsel failed to ask questions related to defendant's gun charges. He argues that his counsel did not inquire as to whether Geraldine had seen the guns, whether defendant had discussed owning a gun, where he kept the guns, and whether there was room in defendant's clothing for two guns. In reality, counsel asked Geraldine several question about the guns found in defendant's possession. He asked her about her testimony that defendant displayed a gun while Geraldine was on the phone with 911, and why she did not inform 911 of the same. Counsel questioned Geraldine about whether it was her gun and whether she owned a gun. Counsel questioned Geraldine as to whether defendant used the gun against her, how many and what type of guns defendant allegedly had, and what physical aggressions Geraldine employed against defendant during the altercation in question. The trial court also interjected and asked Geraldine where defendant had found the gun.

"No one defense counsel will ever develop precisely the same lines of inquiry or frame his questions in exactly the words of another." *Mancusi v Stubbs*, 408 US 204, 215; 92 S Ct 2308; 33 L Ed 2d 293 (1972). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988), quoting *Delaware v Fensterer*, 474 US 15, 20; 106 S Ct 292; 88 L Ed 2d 15 (1985) (citations omitted, emphasis in original). In this case, we conclude that defendant's right to confront Geraldine was not abridged because defendant adequately cross-examined her at the preliminary examination. Defendant has not demonstrated that the cross-examination failed "to ensure the reliability of the evidence against [him] by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Levine*, 231 Mich App at 219-220.

As an aside, we note defendant's suggestion that his counsel at the preliminary examination did not adequately cross-examine Geraldine because he had no motive or interest in disproving the firearm charges. Pursuant to MRE 804(b)(1), prior testimony is only admissible where defense counsel had an opportunity and similar motivation to develop the testimony on cross-examination. "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). As noted, Geraldine was sufficiently cross-examined about the weapons. Even though the burden of proof was lower for the preliminary examination, what was at stake was the same; that is, the possibility of defendant's criminal responsibility. The charges were identical, and the presentation of the evidence was similar. We are not persuaded by defendant's suggestion that his counsel did not have motive to cross-examine Geraldine merely because the testimony took place during a preliminary examination rather than trial.

## III. JURY INSTRUCTIONS

Defendant next takes issue with the trial court's jury instructions on self-defense. We discern no error.

Defendant failed to object to the instructions below, and review is therefore for plain error affecting his substantial rights. *People v Young*, 472 Mich 130, 135; 693 NW2d 801 (2005).[2] Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). A defendant has the right to "a properly

---

[2] We note that defendant arguably waived this issue. Waiver is the "intentional relinquishment or abandonment of a known right," and it extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (quotation marks and citation omitted). A waiver requires the express approval of the trial court's action. *People v Loper*, 299 Mich App 451, 472; 830 NW2d 836 (2013). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). However, because defendant also suggests that his counsel was ineffective for failing to object to the instruction, we think it prudent to address whether there is merit to the argument that the instructions were plainly erroneous. Defendant's ineffective-assistance claim is addressed in section V of this opinion.

instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "Jury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 328; 654 NW2d 651 (2002). There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

Here, the trial court instructed the jury on the elements of felon-in-possession, and then felony-firearm. It then provided the following self-defense instruction, which is the self-defense instruction specific to felony-firearm under M Crim JI 11.34c(2):

> *An individual who has not or is not engaged in the commission of a crime at the time he or she used force* other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat. If he or she honestly and reasonably believes that the use of that force is necessary to defend himself or another individual from the imminent unlawful use of force by another individual.

As noted below, presumably, the trial court intended to provide this self-defense instruction in specific relation to the felony-firearm charge predicated by the felon-in-possession charge. The court later continued:

> The defendant claims that he acted in lawful self defense. A person has the right to use force to defend himself under certain circumstances. *If a person acts in lawful self defense his actions are justified and he is not guilty of felon in possession of a firearm, which is count one, felony firearm, which is count two.*
>
> You should consider all the evidence and use the following rules to decide whether the defendant acted in lawful self defense. Remember to judge the defendant's conduct according to how the circumstances appeared to him at the time he acted.
>
> *First, at the time he acted the defendant must have been engaged in the commission of a crime.*
>
> Second, when he acted the defendant must have honestly and reasonably believed that he had to use force to protect himself from the imminent unlawful use of force by another. If his belief was honest and reasonable he could act at once to defend himself, even if it turns out later that he was wrong about how much danger he was in.
>
> Third, a person is only justified in using the degree of force that seems necessary at the time to protect himself from danger. The defendant must have used the kind of force that was appropriate to the attack made and the circumstances as he saw them. When you decide whether the force used was what seemed necessary you should consider whether the defendant knew about other ways of protecting himself, but you may also consider how the excitement of the moment affected the choice the defendant made.

Fourth, the right to defend oneself only lasts as long as it seems necessary for the purpose of protection. Fifth, the person claiming self defense must not have acted wrongfully and brought on the assault.

The defendant does not have to prove that he acted in self defense. Instead, the Prosecutor must prove beyond a reasonable doubt that the defendant did not act in self defense.

This instruction mirrors M Crim JI 7.22, the general use-of-nondeadly-force jury instruction, except that the model jury instruction omits "First, at the time he acted the defendant must have been engaged in the commission of a crime." The trial court appears to have been drawing a distinction between the self-defense instruction specific to felony-firearm, M Crim JI 11.34c(2), which specifies that it applies to "[a]n individual who has not or is not engaged in the commission of a crime," and the general instruction, which does not specify whether one is or is not engaged in a crime.

Defendant argues that the self-defense instruction given immediately after the first instruction on the elements of felony-firearm—which indicated that defendant could not be engaged in a crime to rely on self-defense—could be understood by the jury to have applied to both the felon-in-possession and felony-firearm charge. It is not clear from reading the instructions whether this was the case. But, presuming that the jury believed that the felony-firearm self-defense instruction applied to both felony-firearm and felon-in-possession, defendant suggests that the instruction constituted a direction for the jury to find defendant guilty of felon-in-possession regardless of whether he was acting in self-defense, since the jury was directed that self-defense would only apply if defendant was not engaged in a crime.

Given that the title of the model jury instruction indicates it was only intended for felony-firearm, the instruction was likely intended only for the felony-firearm charge, but it is not clear that the jury would have made this distinction. Nonetheless, the court went on to expressly instruct that "[i]f a person acts in lawful self defense his actions are justified and he is not guilty of felon in possession of a firearm." Thus, while the court's positioning of the felony-firearm self-defense instruction and the failure to clearly indicate that it applied only to felony-firearm might have created some confusion, the jury was clearly informed that self-defense was a defense to felon-in-possession and accordingly, it cannot be said that there was plain error affecting a substantial right.

Defendant further argues that the jury instruction was erroneous because it misstated the law. Again, the generalized self-defense instruction read, "First, at the time he acted the defendant must have been engaged in the commission of a crime." Defendant points out that this language differs from the language of MCL 780.972, which provides that self-defense in general may only be used by individuals who are not "engaged in the commission of a crime at the time he or she uses force." However, it is apparent that the intent of the statute was to preclude a defense of self-defense for a crime when, in the course of committing the crime while defending oneself, the defendant was committing another crime. The jury instructions did not contradict this idea.

Rather, the instructions spoke to the idea that self-defense is a defense that justifies otherwise punishable criminal conduct. See *Dupree*, 486 Mich at 707. The defense is "one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it." *People v Lemons*,

454 Mich 234, 246; 562 NW2d 447 (1997), quoting 21 Am Jur 2d, Criminal Law, § 183, p 338. Self-defense in a felon-in-possession case is an appropriate defense where the "jury could conclude that defendant's criminal possession of the firearm was justified because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself." *Dupree*, 486 Mich at 708-709. Therefore, it is actually necessary that defendant committed the criminal acts of felon-in-possession and felony-firearm for the self-defense theory to be applicable at all.

With all of the above in mind, we are not confident that the jury instructions related to defendant's self-defense theory were plainly erroneous, and far less confident that they affected defendant's substantial rights by prejudicing the outcome of the case.

## IV. OFFENSE VARIABLE 9

Defendant next argues that the trial court erred in assessing Offense Variable (OV) 9 at 10 points. We disagree.

This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165, 167 (2017). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7. The sentencing offense determines which offense variables are to be assessed, and the appropriate offense variables are generally assessed on the basis of the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).

As noted above, the trial court assessed 10 points for OV 9. Under OV 9, the trial court must assess 10 points when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 9 victims who were placed in danger of property loss." MCL 777.39(1)(c). OV 9 is assessed at zero points when "[t]here were fewer than 2 victims who were placed in danger of physical injury or death, or fewer than 4 victims who were placed in danger of property loss." MCL 777.39(1)(d). The statute instructs the sentencing court to "count each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).

In this case, Geraldine was in danger because defendant possessed a weapon. She testified that defendant produced a revolver, pointed it in her direction, and indicated that he could kill her. Additionally, Devon was in danger when defendant held the revolver facing Geraldine because he was nearby, lying injured and perhaps unconscious near the doorway of the room. Defendant argues that Devon was present but not in danger. However, "scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene" of a crime "who were placed in danger of injury or loss of life." *McGraw*, 484 Mich at 129.

In *People v Kimble*, 252 Mich App 269, 274; 651 NW2d 798 (2002), this Court held that it was proper to assess OV 9 at 10 points when the "victim's fiancé and child were both next to the victim inside [a] car when [the] defendant shot the victim through the windshield." Here, defendant displayed a loaded firearm near Devon, with whom defendant had just had a physical altercation, and threatened Geraldine with the weapon. These circumstances indicate that Devon was endangered by defendant's possession of the firearm. Accordingly, a preponderance of the evidence supported the determination that defendant placed at least two victims in danger by possessing a firearm, and there was no clear error on the trial court's part.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel. We disagree.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *Jordan*, 275 Mich App at 667. The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant argues that his trial counsel failed to impeach Devon's testimony that he had previously seen a silver gun at the home that he believed to belong to defendant. Devon testified that he thought that defendant owned a silver revolver with a brown grip because he had seen it around the house after defendant moved in, and not before. Defendant notes that the two black guns in evidence were the ones seized from him, and he argues that evidence from Devon that defendant owned a third, silver revolver was harmful.[3] Defense counsel elicited on cross-examination that Devon never saw defendant possess the gun, and that Devon only believed it was defendant's gun because he had not seen it before defendant moved into the home. Defendant's counsel also clarified with Devon that Geraldine had told him that she was missing bullets to her gun after defendant had moved in, further raising the possibility that the guns at issue may have

---

[3] Importantly, and as indicated in section VII of this opinion, the officer who dispossessed defendant of the firearms described one of the revolvers as a darker metallic color with a brown handle, and the other as a dark metallic frame with a silver handle. Thus, Devon's testimony concerning the existence of a silver gun does not necessarily implicate the existence of a third weapon. Moreover, and significantly, taking defendant's argument at face value, assuming Devon's testimony could be understood to suggest that the silver weapon was a separate weapon unrelated to defendant's convictions, that testimony was arguably favorable to defendant because it supported his contention that the black guns found in his possession were not his, and that they instead belonged to Geraldine.

belonged to Geraldine. For these reasons, there is no merit to defendant's claim that his trial counsel failed to impeach Devon's testimony regarding the silver revolver.

Defendant also argues that counsel should have sought an instruction on defendant's "innocent possession" of the firearms in relation to his felon-in-possession and carrying a concealed weapon charges. The defense of innocent possession is the "momentary or brief possession of a weapon resulting from the disarming of a wrongful possessor . . . if the possessor had the intention of delivering the weapon to the police at the earliest possible time." *People v Hernandez-Garcia*, 477 Mich 1039, 1040; 728 NW2d 406 (2007). Somewhat confusingly, defendant refers us to *Dupree*, 486 Mich at 710-712, which stated that the trial court erred in that case by *providing* an innocent possession instruction for carrying a concealed weapons charge. "[M]omentary innocent possession of a concealed weapon is *not a defense* to a charge of unlawfully carrying a concealed weapon." *Hernandez-Garcia*, 477 Mich at 1039-1040 (emphasis added).

In any event, at least with respect to defendant's argument as it could relate to felon-in-possession, defendant claimed that he dispossessed Geraldine of the firearms in order to prevent himself from being harmed. He further never expressed an intention to deliver those weapons to law enforcement. Therefore, his trial counsel successfully moved the trial court to instruct the jury on the two more relevant defenses, self-defense and duress.[4] Most significantly, despite any viable justification instruction that the jury could consider, by convicting defendant of carrying a concealed weapon and felon-in-possession, the jury rejected defendant's theory that he possessed the guns because he had to take them from Geraldine in order to prevent her from injuring him. Defendant fails to explain why the jury would have not also rejected an innocent-possession defense for the same reason.[5]

Finally, related to the self-defense instruction issue discussed above, defendant suggests that his trial counsel provided ineffective assistance by failing to object to that instruction. An objection might have led to a clarification of that instruction. However, for the reasons stated in section III of this opinion, defendant has failed to demonstrate that the instruction was erroneous, let alone that he was prejudiced by the instruction itself or his counsel's failure to object.

VI. JURISDICTION

---

[4] Duress is a common-law affirmative defense in which a defendant admits having committed the charged crime, but attempts "to justify, excuse, or mitigate it." *People v Lemons*, 454 Mich 234, 245, 246 n 15; 562 NW2d 447(1997); *Dupree*, 284 Mich App at 99. A successful duress defense excuses a defendant from criminal responsibility because the defendant was compelled to commit the crime in order to avoid a greater harm threatened by another person. *Lemons,* 454 Mich at 246.

[5] Defendant also suggests that his trial counsel should have requested an instruction on the defense of necessity. However, the defense of "necessity applies to situations involving natural physical forces, whereas duress applies to the threatened conduct of another human being." *People v Jones*, 193 Mich App 551, 554; 484 NW2d 688 (1992), rev'd on other grounds 443 Mich 88 (1993). This defense was also inapplicable,

Defendant next argues that his counsel should have moved to dismiss his case because the trial court lacked jurisdiction to convict him. We conclude there is no merit to this issue.

Defendant asserts that the district court bound him over on a charge of felon-in-possession, but that the predicate felony offered by plaintiff had been dismissed. At the preliminary examination, the parties stipulated that defendant was ineligible to possess a firearm because of his February 12, 1986 conviction of "a second-degree homicide." After defendant's first trial, defendant's successor trial counsel filed a motion noting that the date of the conviction was incorrect: "February 22, 2011 and not on February 12, 1986 as is set forth in the third habitual felony offender information and in Count 2 and Count 5 of the general information." Trial counsel noted that the Wayne County Circuit Court had granted a motion by defendant in that case for relief from judgment based on newly discovered evidence on February 7, 2011, and reversed defendant's prior convictions for second-degree murder and felony-firearm pending a new trial. Defendant then pleaded no contest to second-degree murder and felony-firearm on February 22, 2011, and was sentenced to time served. Defendant's trial counsel conceded in this case that it was proper for the prosecutor to amend the felony information to change the date of defendant's prior conviction so long as it did not increase the habitual offender status. And, at trial, the parties stipulated that defendant was previously convicted of a specified felony and was ineligible to possess a firearm.

Defendant's argument that the trial court lacked jurisdiction is premised on the idea that his former conviction was incorrectly dated at his preliminary examination. However, defendant specifies no legal grounds on which his attorney could have successfully objected based on the use of an incorrect date of conviction at that time, or after. In order to convict defendant of felon-in-possession, the prosecutor was required to demonstrate that the defendant possessed a firearm after having been convicted of a felony, unless his right to possess a firearm had been restored. MCL 750.224f; *People v Tice*, 220 Mich App 47, 53–54; 558 NW2d 245, 247 (1996). Because there was no dispute that defendant had previously been convicted of a felony, there was no viable objection that defense counsel could have made to the errant date provided during the preliminary examination, and there is no merit to defendant's jurisdictional challenge.

VII. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor committed misconduct by eliciting the testimony from Devon regarding the silver revolver.

Defendant did not object below on these grounds. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). "The test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial "can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused." *Id*. at 63-64. "Prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 661; 608 NW2d 123 (1999), citing *People v Missouri*, 100 Mich App 310, 328; 299 NW2d 346 (1980).

-11-

Defendant argues that the testimony regarding the third gun was immaterial and was only introduced to demonstrate defendant's propensity to own guns. Any evidence of a handgun in the home was relevant because the main issue was whether defendant impermissibly possessed firearms, or whether he possessed Geraldine's handguns because he had to take them from her in order to protect himself. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Handguns seen in the home in the time leading up to the event that could have belonged to defendant or to Geraldine made it more or less likely that they possessed handguns at the time of the event, which was the central question considered by the jury with regard to the felon-in-possession and carrying a concealed weapon charges. And, importantly, this evidence could also have been understood to be helpful to defendant's case because it could suggest that the two guns in defendant's possession did not belong to him.

Defendant also argues that the prosecutor denied him a fair trial by making comments about the guns that were seized in his closing argument. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241; *People v Fisher*, 193 Mich App 284, 291; 483 NW2d 452 (1992). In rebuttal closing argument, the prosecutor stated:

> These were her guns, right. That's what he said. Well at least one of the guns we heard testimony from Devon that it belonged to the defendant. How does he know? It appeared because after the defendant moved in, it was never around before and then it started appearing when the defendant moved in and he described the gun for you. He'd seen it before. He said it was a silverish looking gun with a brown handle. And you're going to be able to look at the guns if you want. But it's one of the exhibits and it's a brown handled gun that is a darker shade of silver up top.

The prosecutor also stated:

> So ask yourselves what's [Devon's] motivation to come to court and tell you that one of the guns that was recovered on this day was a brown handled revolver, silverish in color up top and that one belonged to the defendant. What's his motivation to say that?

As discussed above, Devon testified that he thought that defendant owned a silver revolver with a brown grip because he had seen it around the house after defendant moved in, and not before. The officer who dispossessed defendant of the firearms described one of the revolvers as a darker metallic color with a brown handle, and the other as a dark metallic frame with a silver handle. The firearms were admitted into evidence. It appears that defendant's trial counsel accurately recounted Devon's trial testimony, and invited the jury to inspect the firearms to determine whether the colors matched. Prosecutors are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236, citing *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Defendant's argument is without merit.

## VIII. PRIOR BAD ACTS

Defendant next argues that evidence of prior bad acts was erroneously admitted at trial. Defendant argues that the trial court abused its discretion by allowing plaintiff to enter evidence of the seriousness of defendant's past felony conviction. Evidence of prior crimes by a defendant must be excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998).

The parties stipulated to enter evidence that defendant had been convicted of a felony and was unable to possess a firearm, but did not disclose the specific crime to the jury. On redirect examination, defendant testified that he did not inform the police that Devon was aggressive with him because he did not want Devon to be charged with a felony for assaulting him. On re-cross-examination, defendant again stated that he did not inform the police of Devon's involvement because he did not want Devon to be arrested for felony assault. Defendant explained that defendant "had a felony in [his] teens," and that defendant "didn't want [Devon] to be stigmatized with the same thing." The prosecutor asked in response: "Okay. Assault and battery. The felony that you were convicted of in your teens and don't tell, it was a little more than an assault and battery, wasn't it." He repeated: "It wasn't just an assault and battery that you were convicted of in 1980 something, right?" Over defendant's objection, the trial court allowed the prosecutor to ask defendant whether he had been convicted of assault and battery, and the prosecutor had defendant clarify that his felony conviction was not assault and battery. The prosecutor asked, over another objection, whether the crime "entailed more than just an assault with fists and feet," which defendant affirmed.

Defendant argues that the evidence was not material, and was prejudicial. However, the evidence was relevant because defendant stated that he thought that Devon would be arrested for a felony assault against him, and did not report Devon's violence because defendant "had a felony in [his] teens," and defendant did not want Devon to be "stigmatized with the same thing." Defendant opened the door to this line of questioning, and the questioning was relevant to clarify defendant's statement that Devon would have been "stigmatized with the *same thing*." That is, defendant equated Devon's possible felony conviction with his own prior conviction, which was not an apt analogy. The prosecution had the right to present that fact to the jury.

Moreover, this evidence was not unfairly prejudicial compared to its probative value. Evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins,* 491 Mich 450, 477, 481; 818 NW2d 296 (2012). Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use" of the evidence. *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), citing *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995). The evidence here was limited to defendant testifying that his prior felony conviction was not the same as the felony he thought that Devon would be charged with for kicking and hitting him. The jury only learned from the testimony that defendant had not been convicted of felony assault as a result of kicking and hitting another, which would not induce the jury to convict him based on his past unspecified felony.

IX. SENTENCING

-13-

Defendant lastly argues that the trial court relied on acquitted conduct to justify defendant's sentence. However, defendant's claim is without merit because the sentencing transcript indicates that the trial court did not consider acquitted conduct; the court discussed the conduct and specifically stated that it was not commenting on defendant's culpability. Most importantly, defendant's sentence was within his minimum sentencing guidelines range. Defendant was sentenced to 23 months to 10 years for carrying a concealed weapon and felon-in-possession, and his guideline range was 10 to 34 months.

A sentence within the guidelines range is presumed to be proportional. *People v Lyons*, 222 Mich App 319, 324; 564 NW2d 114 (1997); *People v Albert*, 207 Mich App 73, 75; 523 NW2d 825 (1994). When "the sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error or inaccurate information was relied upon in determining the sentence and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand." MCL 769.34(10); *Kimble*, 470 Mich at 310-311. Having already concluded that there was no scoring error in the calculation of defendant's minimum sentencing guidelines range, further review of his sentence is precluded.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

-14-